1  Scott Edward Cole, Esq. (S.B. #160744)
   Laura Grace Van Note, Esq. (S.B. #310160)
2  **SCOTT COLE & ASSOCIATES, APC**
   555 12th Street, Suite 1725
3  Oakland, California 94607
   Telephone: (510) 891-9800
4  Facsimile: (510) 891-7030
   Email: scole@scalaw.com
5  Email: lvannote@scalaw.com
   Web: www.scalaw.com
6
7  Attorneys for Representative Plaintiff,
   Aggrieved Employees and the Plaintiff Class
8

9              **UNITED STATES DISTRICT COURT**

10            **NORTHERN DISTRICT OF CALIFORNIA**

11                    **SAN JOSE DIVISION**

12

13  MORGAN MCSHAN, individually, and          **Case No. 5:19-CV-03316-LHK**
    on behalf of all others similarly situated,
14                                            **CLASS ACTION**
                         Plaintiff,
15                                            **PLAINTIFF'S NOTICE OF MOTION AND**
    vs.                                       **MOTION FOR PRELIMINARY APPROVAL**
16                                            **OF CLASS ACTION SETTLEMENT;**
    HOTEL VALENCIA CORPORATION                **MEMORANDUM OF POINTS AND**
    and DOES 1 through 100, inclusive,        **AUTHORITIES**
17
                         Defendant.           **Date:    February 25, 2021**
18                                            **Time:    1:30 p.m.**
                                              **Dept.:   8**
19                                            **Judge:   Lucy H. Koh**

20

21

22

23

24

25

26

27

28

-1-
Plaintiff's Motion for Preliminary Settlement Approval
Case No. 5:19-CV-03316-LHK

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
555 12TH STREET, SUITE 1725
OAKLAND, CA 94607
TEL: (510) 891-9800

## NOTICE OF MOTION

**TO THE COURT AND ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that, on February 25, 2021 at 1:30 p.m. of the above-entitled Court, located at 280 South 1st Street, San Jose, California, Representative Plaintiff Morgan McShan ("Plaintiff") will and hereby does move the Court for an order granting preliminary approval of the class action settlement with Defendant Hotel Valencia Corporation ("Defendant," and all parties collectively as the "Parties").

This motion shall be based on Rule 23 of the Federal Rules of Civil Procedure and in conformity with the recent Northern District of California Procedural Guidance for Class Action Settlements.

This motion is made on the grounds that the proposed settlement is within the range of reasonableness and the Class Notice fairly and adequately informs the Class Members of the terms of the proposed Settlement, their potential awards, their rights and responsibilities, and the consequences of the Settlement.

This motion is based on this Notice, the attached Memorandum of Points and Authorities, the Declaration of Scott Edward Cole, Esq. and the exhibits thereto, the documents and records on file in this matter, and such additional arguments, authorities, evidence and other matters as may be presented in supplemental briefing and/or oral argument.

## RELIEF SOUGHT

Plaintiff respectfully requests the Court issue an Order:

1.    Conditionally certifying the class and the class claims;

2.    Conditionally appointing Plaintiff and Class Counsel as representatives of the proposed Settlement Class;

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
555 12TH STREET, SUITE 1725
OAKLAND, CA 94607
TEL: (510) 891-9800

1        3.    Granting preliminary approval of the class action settlement set forth in the

2    Agreement, a true and correct copy of which is attached to the Declaration of Scott Edward Cole,

3    Esq.;

4        4.    Approving the Class Notice, a true and correct copy of which is attached to the

5    Declaration of Scott Edward Cole, Esq.;

6        5.    Appointing Simpluris Class Action Settlement Administration ("Simpluris") as the

7    Settlement Administrator; and

8        6.    Setting a hearing on final approval of the class action settlement ("Final Approval

9    Hearing"), at which Class Members may be heard, and for Plaintiff's Class Counsel's application

10   for an award of attorneys' fees and litigation costs and Plaintiff's service award.

11

12

13   Dated: October 26, 2020              **SCOTT COLE & ASSOCIATES, APC**

14

15                                By:  _____
                                       Laura Van Note, Esq.
16                                     Attorneys for Representative Plaintiff,
                                       Aggrieved Employees and the Plaintiff Class
17

18

19

20

21

22

23

24

25

26

27

28

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
555 12TH STREET, SUITE 1725
OAKLAND, CA 94607
TEL: (510) 891-9800

-3-

**TABLE OF CONTENTS**

I.   INTRODUCTION ................................................................................. 1

II.  PROCEDURAL HISTORY AND SETTLEMENT NEGOTIATIONS ................. 1

III. SUMMARY OF SETTLEMENT TERMS ............................................... 2

    A.   VALUATION OF PRIMARY CLAIMS ALLEGED ............................... 5

        1.  Missed Meal Breaks ............................................................ 5
        2.  Missed Rest Breaks ............................................................ 7
        3.  Waiting Time Penalties ...................................................... 7
        4.  Wage Statement Violations ................................................ 8
        5.  PAGA Penalties ................................................................. 9
        6.  Summary ............................................................................ 6

    B.   COMPARISON TO PAST DISTRIBUTIONS ............................. 12

    C.   THE RISK, EXPENSE AND LIKELY DURATION OF FURTHER LITIGATION SUPPORTS SETTLEMENT ............. 13

IV.  CLASS ACTION SETTLEMENT APPROVAL PROCEDURE ........................ 14

    A.   THE SETTLEMENT AMOUNT REPRESENTS A SUBSTANTIAL RECOVERY ................................................ 15

    B.   THE PROPOSED PAGA PAYMENT TO THE LWDA IS REASONABLE .................................................................... 16

    C.   THE SETTLEMENT WAS REACHED AFTER INFORMED, ARM'S LENGTH NEGOTIATIONS .................................... 18

    D.   THE SETTLEMENT DOES NOT SUFFER FROM ANY OBVIOUS DEFICIENCIES .................................................. 18

    E.   PLAINTIFF'S SERVICE AWARD IS APPROPRIATE ............. 19

    F.   THE SETTLEMENT ADMINISTRATOR IS APPROPRIATE ..... 19

    G.   THE SETTLEMENT FALLS WITHIN THE RANGE OF POSSIBLE APPROVAL ...................................................... 20

V.   CONDITIONAL CERTIFICATION REQUIREMENTS ARE MET ................ 21

    A.   THE CLASS IS SUFFICIENTLY NUMEROUS ...................... 21

    B.   THE COMMONALITY REQUIREMENT IS MET .................... 22

    C.   THE TYPICALITY REQUIREMENT IS MET ........................ 23

    D.   THE ADEQUACY REQUIREMENT IS MET ......................... 24

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
555 12TH STREET, SUITE 1725
OAKLAND, CA 94607
TEL: (510) 891-9800

-4-
Plaintiff's Motion for Preliminary Settlement Approval
Case No. 5:19-CV-03316-LHK

E.  COMMON ISSUES PREDOMINATE OVER INDIVIDUAL ISSUES...................................................................................24

F.  CLASS SETTLEMENT IS SUPERIOR TO OTHER METHODS OF RESOLUTION ...........................................................25

VI.  STATEMENT REGARDING THE NOTICE PACKET........................................27

VII.  CLASS COUNSEL'S REQUEST FOR ATTORNEYS' FEES.............................28

VIII.  SCHEDULING A FINAL APPROVAL HEARING IS APPROPRIATE ............29

IX.  CONCLUSION ...............................................................................29

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
555 12TH STREET, SUITE 1725
OAKLAND, CA 94607
TEL: (510) 891-9800

1

**TABLE OF AUTHORITIES**

2

**CASES** Pgs.

3

*Alvarado v. Nederend,*
4        2011 WL 90228 (E.D. Cal. Jan. 11, 2011).................................................................14

5 *Allen v. Caine & Weiner Company, Inc.*
         (July 19, 2011) Los Angeles Superior Court, Case No. BC464979 ...................16
6

*Amaral v. Cintas Corp. No. 2,*
7        163 Cal.App.4th 1157, 1203-04 (2008) ...............................................................8,9

8 *Ambrose v. Associated Ready Mixed Concrete, Inc.*
         (Oct. 19, 2015) Los Angeles Superior Court, Case No. BC598309 ...................16
9

10 *Amchem Products v. Windsor,*
         521 U.S. 591, 117 S.Ct. 2231 (1997) ..............................................................24,26

11 *Baker, et al. v. L.A. Fitness International, LLC*
         (May 28, 2010) Los Angeles Superior Court, Case No. BC464785...................16
12

13 *Barbosa v. Cargill Meat Solutions Corp.,*
         297 F.R.D. 431, 450-51 (E.D. Cal. July 2, 2013) .................................................3

14 *Barnwell v. Pacific Ocean Transportation, Inc.*
         (May 31, 2016) Los Angeles Superior Court, Case No. BC555412.....................16
15

16 *Baumann v. Chased Investments Services Corp., et al.*
         (July 8, 2011) Los Angeles Superior Court, Case No. BC465806 .....................16

17 *Brinker Restaurant Corp. v. Superior Court,*
         53 Cal.4th 1004 (2012) .......................................................................................6
18

19 *Churchill Vill., L.L.C. v. GE,*
         361 F.3d 566 (9th Cir. 2004)..............................................................................27

20 *Cipro Cases I and II,*
         121 Cal.App.4th 402, 409 (2004) .......................................................................13
21

22 *Collins v. Cargill Meat Solutions Corp.,*
         274 F.R.D. 294 (E.D. Cal. 2011)....................................................................14,15

23 *Day v. NLO,*
         851 F.Supp. 869 (S.D. Ohio 1994)....................................................................23
24

25 *Eisen v. Carlisle & Jacquelin,*
         417 U.S. 156 (1974) .......................................................................................27,28

26 *Estrada v. FedEx Ground Package System, Inc.,*
         154 Cal.App.4th 1 (2007)...................................................................................25

27

28

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
555 12TH STREET, SUITE 1725
OAKLAND, CA 94607
TEL: (510) 891-9800

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
555 12TH STREET, SUITE 1725
OAKLAND, CA 94607
TEL: (510) 891-9800

*Ferguson v. Lieff, Cabraser, Heimann & Bernstein*,
30 Cal.4th 1037, 1054 (2003) ....................13

*Fleming v. Covidien Inc.*,
2011 WL 7563047, at *3-4 (C.D. Cal. Aug. 12, 2011) .................... 9

*Franco, et al v. Ruiz Food Products, Inc.*
(Dec. 15, 2010) E.D. Cal Case No. 1:10-cv-02354-SKO ....................17

*Franklin v. Kayrpo Corp.*,
884 F.2d 1222, 1229 (9th Cir. 1989) .................... 13

*Finder v. Leprino Foods Co.*,
No. 1:13-CV-2059 AWI-BAM, 2015 U.S. Dist. LEXIS 30652, at *1
(E.D. Cal. March 12, 2015) .................... 8,9

*Garcia v. Gordon Trucking, Inc., et al.*
(Feb. 23, 2010; E.D. Cal. Case No. 1:10-cv-00324-AWI-SKO) ....................3,16

*Gay v. Waiters' & Dairy Lunchmen's Union*,
489 F. Supp. 282 (N.D. Cal. 1980)....................21

*Ghazaryan v. Diva Limousine, Ltd.*,
169 Cal. App. 4th 1524 (2008) ....................25

*Gutierrez v. Kovacevich "5" Farms*,
2004 WL 3745224, at *5 (E.D. Cal. Dec. 2, 2004) ....................23

*Haley v. Medtronic, Inc.*,
169 F.R.D. 643 (C.D. Cal. 1996) .................... 22

*Hanlon v. Chrysler Corp.*,
150 F.3d 1011 (9th Cir. 1998) ....................14,21,22,23,24,26,27

*Harris v. Vector Mktg. Corp.*,
No. C-08-5198 EMC, 2011 WL 1627973 (N.D. Cal. Apr. 29, 2011) .................... 19

*In re Autozone, Inc. Wage and Hour Litig.*,
Case No. 3:10-md-021590CRB, 2016 WL 4208200 at **6-7 (N.D. Cal. Aug. 10, 2016) .... 8

*In re Celera Corp. Sec. Litig.*,
No. 5:10-CV-02604-EJD, 2015 WL 1482303, at *3 (N.D. Cal. Mar. 31, 2015) .........21

*In re Heritage Bond Litig.*,
546 F.3d 667 (9th Cir. 2009) ....................14

*In re Mego Fin. Corp. Litig.*,
213 F.3d 454 (9th Cir. 2000) ....................21

*In Re Prudential Ins. Co. of Am. Sales Practice Litig.*,
    962 F. Supp. 450 (D. N.J. 1997) ............................................................... 26

*In re Tableware Antitrust Litig.*,
    484 F. Supp. 2d 1078 (N.D. Cal. 2007) .......................................................20

*In re Wells Fargo Loan Processor Overtime Pay Litig.*,
    2011 WL 3352460 (N.D. Cal. Aug. 2, 2011) ............................................. 28

*Jordan v. County of Los Angeles*,
    669 F.2d 1311 (9th Cir. 1982) .................................................................. 21

*Kirby v. Imoos Fire Protection, Inc.*,
    53 Cal. 4th 1244 (2012) ............................................................................ 8

*Kullar*,
    168 Cal.App.4th 116 (2008) ..................................................................... 13

*Ling v. P.F. Chang's China Bistro, Inc.*,
    245 Cal.App.4th 1242, 1261 (2016) ......................................................... 7,8

*Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas*,
    244 F.3d 1152 (9th Cir. 2001) .................................................................. 26

*Magadia v. Wal-Mart Associates, Inc.*,
    384 F.Supp. 1058 (N.D. Cal. 2019) ......................................................... 10

*Makabi v. Gedalia*,
    No. BC468146, (L.A. Super. Ct. May 8, 2013) ......................................... 9

*Maldonado v. Epsiolon Plastics, Inc.*,
    22 Cal.App.5th 1308, 1337 (2018) ............................................................ 8

*Mendoza v. United States*,
    623 F.2d 1338 (9th Cir. 1980) .................................................................. 27

*Mullane v. Central Hanover Bank & Trust Co.*,
    40 Cal. App.5th 444 (Ct. App. 2019) ....................................................... 28

*Naranjo v. Spectrum Security Services, Inc.*
    (No. S258966) 40 Cal.App.5th 444 (2020 Cal.App. LEXIS 167) ........................ 8,21

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
555 12TH STREET, SUITE 1725
OAKLAND, CA 94607
TEL: (510) 891-9800

*Nordstrom Commission Cases*
    186 Cal.App.4th 576 (Ct. App. 2010) ............................................................... 16

*Officers for Justice v. Civil Serv. Comm'n of San Francisco,*
    688 F.2d 615 (9th Cir. 1982) ....................................................................... 14

*Prince v. CLS Transportation, Inc.,*
    118 Cal.App.4th 1320 (2004) ....................................................................... 25

*Pokorny v. Quixtar, Inc.,*
    No. C 07-0201 SC, 2013 U.S. Dist. LEXIS 100791 *4 (N.D. Cal. July 18, 2013) ...... 3

*Rainbow Bus. Solutions v. Merch. Servs,*
    2013 U.S. Dist. LEXIS 179288, *15 (N.D. Cal. 2013) ..................................... 23

*Rodriguez v. Kraft Foods Group, Inc.*
    (July 18, 2014, E.D. Cal. Case No. 1:14-cv-01137-LJO-EPG) .............................17

*Rodriguez v. West Publ'g Corp.,*
    563 F. 3d 948 (9th Cir. 2009) ........................................................19,21,28

*Serrano v. Bay Bread LLC,*
    2016 Cal. Super. LEXIS 8043 at *22 (June 29, 2016) .......................................8

*Slaven v. BP Am., Inc.,*
    190 F.R.D. 649 (C.D. Cal. 2000) ................................................................. 22

*Staton v. Boeing Co.,*
    327 F.3d 938 (9th Cir. 2003) ....................................................................... 19

*Thompson v. Trifecta JLS, Inc. et al.*
    (Case No. RG16832089) ............................................................................ 12

*Thurman v. Bayshore Transit Mgmt.,*
    203 Cal.App.4th 1112, 1135-36 (2012) .......................................................... 10

*Tierno v. Rite Aid Corp.,*
    2006 U.S. Dist. LEXIS 71794 (N.D. Cal. Aug. 31, 2006) ...................................23

*Vasquez v. Coast Valley Roofing, Inc.,*
    670 F. Supp. 2d 1114 (E.D. Cal. 2009) ....................................................... 3,20

*Westways World Travel, Inc. v. AMC Corp.,*
    218 F.R.D. 223 (C.D. Cal. 2003) ................................................................. 26

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
555 12TH STREET, SUITE 1725
OAKLAND, CA 94607
TEL: (510) 891-9800

*Wehner v. Syntex Corp.*,
    117 F.R.D. 641 (N.D. Cal. 1987) .......................................................... 23

*White v. Starbucks Corp.*,
    497 F.Supp.2d 1080 (N.D. Cal. 2007) ..................................................... 6

*Willner v. Manpower Inc.*,
    35 F.Supp.3d 1116, 1131 (N.D. Cal. 2014) .............................................. 8

*Young v. Katz*,
    447 F.2d 431, 433 (5th Cir. 1971) ........................................................ 13

**Rules**

Federal Rule of Civil Procedure § 23(a)(2) ...................................................... 22

Federal Rule of Civil Procedure § 23(b)(3) ...................................................... 14

Federal Rule of Civil Procedure § 23(e) ...................................................... 14,21

**Statutes**

Cal. Code Civ. Proc. § 904.1 ................................................................. 13

Cal. Bus and Prof Code § 17200, et seq. ...................................................... 23

Cal. Labor Code § 203 ....................................................................7,8,23

Cal. Labor Code § 226.7 ..............................................................7,8,9,21,22

Cal. Labor Code §512 .................................................................. 17,31,32

Cal. Labor Code § 2699(e)(1) ................................................................. 9

**Secondary Sources**

*MCL* § 21.63 at 447-50 ...................................................................... 29

*McLaughlin on Class Actions: Law and Practice* § 6.6 (7th ed. 2011) ..................... 25

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
555 12ᵀᴴ STREET, SUITE 1725
OAKLAND, CA 94607
TEL: (510) 891-9800

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

**I.    INTRODUCTION**

Plaintiff Morgan McShan filed this case individually and as a class action on behalf of all others similarly situated on April 10, 2019, alleging that Defendant Hotel Valencia Corporation's policies and practices prevented him and class members from taking statutorily-mandated meal and rest breaks. The class was defined as "[a]ll persons employed as non-exempt employees by Hotel Valencia Corporation in California at any time on or after April 10, 2015." Defendant removed the case to Federal Court and Plaintiff subsequently filed a First Amended Complaint on November 6, 2019 for violations of the same statutes, as aggrieved employees under the Private Attorneys General Act, Labor Code § 2698 et. seq. (PAGA). The basis of the Complaint was that Defendant operated its hotel using consistent policies that resulted in various wage and hour violations against the non-exempt hotel employees, including unpaid wages for missed and/or interrupted meal and rest breaks. Defendant denies all claims alleged in the operative complaint and disputes any liability for the damages sought. After discovery efforts and a full day mediation, and subsequent weeks of further negotiations, the parties agreed to a $365,000 ***non-reversionary*** settlement. Given the scope of Defendant's operations, the nature of the alleged violations, and the size of the Plaintiff Class, this settlement is well within the range of reasonableness and should be approved.[1]

**II.    PROCEDURAL HISTORY AND SETTLEMENT NEGOTIATIONS**

On April 10, 2019, Plaintiff filed his original Complaint, alleging on an individual and class basis that Defendant's policies and practices had resulted in: (1) failure to pay wages, (2) failure to provide meal and rest periods; (3) failure to pay overtime wages; (4) failure to provide accurate itemized wage statements; (5) failure to pay wages upon termination and (6) unfair

---

[1] A copy of the fully executed Settlement Agreement and Release of Claims ("Settlement" or "Settlement Agreement"), is attached to the Declaration of Scott Edward Cole, Esq. in Support of Plaintiff's Motion for Preliminary Approval of Class Action Settlement ("Cole Decl.") as Exhibit "A." Unless otherwise noted, all exhibits cited herein are attached to the Cole Decl.

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
555 12TH STREET, SUITE 1725
OAKLAND, CA 94607
TEL: (510) 891-9800

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
555 12TH STREET, SUITE 1725
OAKLAND, CA 94607
TEL: (510) 891-9800

1  business practices. On June 12, 2019, Defendant removed the case to Federal Court. On August

2  28, 2019, Plaintiff filed a notice with California's Labor and Workforce Development Agency

3  ("LWDA") regarding his intent to file an action seeking civil penalties under PAGA. On

4  November 6, 2019, Plaintiff filed a First Amended Complaint adding a cause of action under

5  PAGA.

6  Through formal and informal discovery/exchanges[2], Defendant provided Plaintiff's

7  counsel with Plaintiff's personnel file, time records and payroll records. Additionally, Plaintiff's

8  counsel was provided with employment documents and detailed summaries of the hours worked

9  by the Settlement Class Members at the hotel operated by Hotel Valencia Corporation in

10  California.

11  On December 3, 2019, the Parties attended private mediation with an experienced

12  mediator, Lisa Klerman, wherein the Parties reached a settlement, as provided herein, to settle

13  Plaintiff's claims on a class and representative action basis. The parties engaged in further

14  negotiations in the following weeks and months. The final result is a $365,000 *non-reversionary*

15  settlement which, given the size of the class, is well within the range of reasonableness when

16  balanced against the risks of continued litigation and the possibility of obtaining more.

17

18  **III.    SUMMARY OF SETTLEMENT TERMS**

19  Under the Settlement, Defendant will pay $365,000 ("Gross Settlement Fund") for a

20  limited release of the Class Members' claims actually alleged in the action or that could have been

21  alleged based on the facts stated in the operative Complaints.[3] The Plaintiff Class consists of any

22  non-exempt hotel worker who worked in California during the period beginning April 10, 2015

23  through December 9, 2019 ("Class Period"),[4] at the Hotel Valencia Corporation in San Jose,

24  California, excluding any worker who had previously executed a release that completely waives

25

26  [2] Including information contained in the Parties Joint Rule 26(f) Report.
27  [3] Exhibit "A," Settlement, ¶ 15.
   [4] Exhibit "A," Settlement, ¶ 20.

28

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
555 12ᵀᴴ STREET, SUITE 1725
OAKLAND, CA 94607
TEL: (510) 891-9800

1  any meal and rest break claims against the Defendant for whom the individual worked ("Plaintiff

2  Class").

3        The "Net Settlement Fund" will be distributed among Plaintiff Class Members and will be

4  calculated by deducting attorneys' fees and costs, service award to the Class Representative, the

5  costs of the Settlement Administrator (not to exceed $7,500 – a reasonable amount given the size

6  of the Class and the work required to process settlement checks),[5] and a payment to the LWDA

7  for the release of PAGA claims from the Total Settlement Amount.[6]

8        The entire Net Settlement Fund will be disbursed to the Plaintiff Class Members that do

9  not timely opt-out ("Settlement Class Members"). Individual Settlement Shares will be calculated

10  based on the number of Compensable Pay Period worked by each Settlement Class Member during

11  the Settlement Period, divided by the total number of Compensable Pay Periods worked by all

12  Class Members during the Settlement Period.[7] At this point, the claims administrator has yet to

13  receive the class information to make these calculations, but if preliminary approval is granted the

14  notice sent to Class Members will contain an estimate of the amount they will receive so the Class

15  Members have the information necessary to decide whether to opt out or object.

16        The parties have agreed that Scott Cole & Associates, APC will serve as Class Counsel.

17  Defendant will not oppose Class Counsel's request for attorneys' fees of up to 25% of the Gross

18  Settlement Amount ($91,250.00).[8] The proposed fee award is reasonable when viewed against

19  awards in other analogous cases approved in Federal courts, where awards of up to 33.3% of

20  settlement amounts are commonly granted.[9] The Settlement also provides for an Enhancement

21

22  [5] Exhibit "A," Settlement, ¶ 37. Cole Decl. ¶ 29.
    [6] Exhibit "A," Settlement, ¶ 34.
23  [7] Exhibit "A," Settlement, ¶ 38.
    [8] Exhibit "A," Settlement, ¶ 36.
24  [9] See, e.g., Barbosa v. Cargill Meat Solutions Corp., 2013 U.S. Dist. LEXIS 93194 (E.D. Cal. July
    1, 2013) (approving fee award amounting to one-third of the Gross Settlement Fund); Garcia v.
25  Gordon Trucking, Inc., 2012 U.S. Dist. LEXIS 160052 (E.D. Cal. Oct. 31, 2012) (approving fee
    request in the amount of 33 percent of the common fund); Vasquez v. Coast Valley Roofing, 266
26  F.R.D. 482 (E.D. Cal. 2010) (approving fee request in the amount of 33.3% of the common fund
    in wage-and-hour action putative class-action settlement); See also Pokorny v. Quixtar, Inc., No.
27  C 07-0201 SC, 2013 U.S. Dist. LEXIS 100791 *4 (N.D. Cal. July 18, 2013) (the "Ninth Circuit
    uses a 25% baseline in common fund class actions, and in most common fund cases, the award

28

-13-

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
555 12TH STREET, SUITE 1725
OAKLAND, CA 94607
TEL: (510) 891-9800

1  Award of up to $2,500 to Representative Plaintiff Morgan McShan, as compensation for the time

2  and effort he spent in prosecuting this case, the risk of participating in the litigation, and in

3  consideration for the claims released.[10] The Settlement also provides for a payment of $4,000 for

4  a release of PAGA claims, 75% of which will be remitted to the LWDA and 25% will become part

5  of the Net Settlement Fund.[11] Individual Settlement Shares will be allocated as 20% wages, 40%

6  penalties, and 40% interest for tax purposes.[12]

7      Within five (5) calendar days of the entry of an Order granting preliminary approval,

8  Defendant will provide the Settlement Administrator with the Class Members' names, social

9  security numbers, dates of employment, and last known addresses, which the Settlement

10  Administrator will verify and update using the National Change of Address ("NCOA") Database.[13]

11  Within ten (10) business days of entry of an Order granting preliminary approval, the Settlement

12  Administrator will disseminate the Notice Packages by first class mail.[14] Class Members will have

13  forty-five (45) calendar days after the date the Notice Packages are mailed to opt-out or object

14  ("General Opt-Out Deadline"), and if Notice Packages are re-sent after having been returned as

15  undeliverable to the Settlement Administrator, Members will have an additional ten (10) calendar

16  days from the date that Notice Packages were re-sent ("Extended Opt-Out Deadline").[15]

17      The Effective Date of the Settlement means the earliest date following entry by the Court

18  of an order and judgement finally approving the Settlement, upon which one of the following have

19  occurred: (i) expiration of all potential appeal periods without a filing of a notice of appeal of the

20  final approval order or judgment, or (ii) final affirmance of the final approval order and judgment

21  by an appellate court as a result of any appeal(s) or (iii) final dismissal or denial of all such appeals

22

23

24  exceeds that benchmark, with a 30% award the norm absent extraordinary circumstances that
suggest reasons to lower or increase the percentage").

25  [10] Exhibit "A," Settlement, ¶ 35.

[11] Exhibit "A," Settlement, ¶ 34.

26  [12] Exhibit "A," Settlement, ¶ 39.

[13] Exhibit "A," Settlement, ¶ 50.

27  [14] Exhibit "A," Settlement, ¶ 49.

[15] Exhibit "A," Settlement, ¶ 54.

28

1   (including any petitions for review, rehearing, certiorari, etc.) such that the final approval order

2   and judgment is no longer subject to further judicial review.[16]

3        No later than forty-five (45) days after entry of the Final Approval Order, Defendant shall

4   provide the Gross Settlement Fund to the Settlement Administrator to fund the Settlement, as set

5   forth in this Agreement.[17] Settlement Class Members' checks will be distributed by the Settlement

6   Administrator no later than ten (10) business days after the Funding Date.[18] Settlement checks will

7   remain valid for one hundred and eighty (180) calendar days from the date of issuance.[19]

8        In the event funds are not cashed before the Void Date, the funds will be distributed to

9   Legal Aid at Work in San Francisco, CA.[20] Legal Aid at Work is a non-profit legal services

10  organization that assists low-income individuals in employment and labor issues by providing

11  legal services, education, and advocacy for workers' rights.[21]  Settlement checks can be reissued

12  to Settlement Class Members upon request within this 180-day period, but any reissued checks

13  shall have the same Void Date as the original settlement check. Those Settlement Class Members

14  who fail to cash their settlement checks by the Void Date will be deemed to have waived

15  irrevocably any right in or claim to any proceeds from the Settlement and to any payments by

16  Defendant, but the terms of this Agreement shall remain binding upon them.[22]

17

18      **A. VALUATION OF PRIMARY CLAIMS ALLEGED**

19       **1. Missed Meal Breaks**

20       The allegation that Defendant deprived class members of meal and rest periods was the

21  driving force of this litigation. However, as the company's policies exhibited, Defendant had taken

22  a variety of steps to adopt and enforce compliant meal and rest break policies by the time this case

23

24  [16] Exhibit "A," Settlement, ¶ 9.
    [17] Exhibit "A," Settlement, ¶ 32.

25  [18] Exhibit "A," Settlement, ¶ 33.
    [19] Exhibit "A," Settlement, ¶ 65.

26  [20] Exhibit "A," Settlement, ¶ 65. The parties have no relationship with the Cy Pres other than
    having assigned it as a Cy Pres beneficiary in other settlements. Cole Decl. ¶ 30.

27  [21] See https://legalaidatwork.org/
    [22] Exhibit "A," Settlement, ¶ 65.

28

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
555 12TH STREET, SUITE 1725
OAKLAND, CA 94607
TEL: (510) 891-9800

was filed. Indeed, SCA all but conceded this fact, and yet, maintained that the violations stemmed more from scheduling practices (versus a *per se* noncompliant policy) whereby many workers were required to remain "on-duty" during their breaks, an inadequate labor budget to consistently permit employee coverage during breaks and/or that workers were uninformed as to what constituted a valid break to begin with.

Despite Representative Plaintiff's allegations, however, the arguable lack of a *per se* violative policy presented significant challenges to class certification, as did Defendant's argument that this class of workers served in various positions, under (at least, potentially) varying degrees and styles of management oversight.[23] And, even if the Court certified the class (or a subclass thereof), Defendant would undoubtedly argue it need only make breaks *available* and that it had no obligation to *ensure* that breaks were actually taken. *Brinker Restaurant Corp. v. Superior Court*, 53 Cal.4th 1004 (2012); *White v. Starbucks Corp.*, 497 F.Supp.2d 1080 (N.D. Cal. 2007).

Nevertheless, based on SCA's analysis of the available payroll records, it was determined that the number of pay period in which meal periods could be missed was as high as 7,290. Using this information and data provided by Defendant, an average (weighted) hourly wage of $15.08, and assuming a violation every worker worked a full time shift five days per week, every week, the liability exposure possible for this claim could approach $440,000 over the period since April 2015. This recovery number is, of course, based on a variety of assumptions, none of which Defendant has agreed to, on schedules for this largely part time workforce that would be unrealistic (i.e., that every worker worked every day for eight full hours), and on the assumption that all elements of this claim could be proven (as well as its frequency) at trial.

Indeed, perhaps the most questionable assumption is that roughly 4-5 potential meal periods per pay cycle (i.e., a violation every single working day) were actually "missed," not to

---

[23] While Representative Plaintiff's position that liability and premium wages due for missed meal and rest periods could be determined using representative sampling, Defendant would certainly attack any proposed methodology and argue the class issues to be unmanageable. What's more, turning to damages, few, if any, records were available which demonstrated meal or rest period violations, making damages calculations difficult. This quantification, however, would be Representative Plaintiff's burden.

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
555 12TH STREET, SUITE 1725
OAKLAND, CA 94607
TEL: (510) 891-9800

mention represent a "violation" of Labor Code §512. Given that class members would rarely have made or kept independent records of whether they took complaint breaks, it is likely that many, if not the vast majority, of any breaks missed would be, in fact, punch-in/punch-out errors or class member neglect in punching in/out at all. That, and given the generally unsophisticated approach by entry-level workers to diligent timekeeping, it is very likely that many workers simply took their breaks without punching out properly or notifying management when they left for a break. And, in other situations, it is likely that many class members were afforded the chance for a break but simply elected not to take one for any one of myriad reasons. These challenges—and the paucity of records to demonstrate the violations—reveals that a substantial discount off SCA's original damages estimate was appropriate.

### 2. Missed Rest Breaks

As discussed above, the risk of losing class certification, proof of compliant policies and aggressive enforcement measures means SCA was also compelled to deeply discount its rest break damages analysis. Using the same data points enumerated above and based upon its investigation, the liability exposure possible for missed rest periods could also approach $1 million. Again, however, none of the assumptions supporting this estimate were conceded by Defendant and, for all the reasons set forth above (e.g., whether these were actually "missed" breaks, a lack of independent record-keeping), it is suspect if even a substantial percentage of these occurrences could constitute violations of § 226.7. Add to these uncertainties the fact that employers may require workers to stay on-premises during rest periods, and it becomes even more evident why many workers may simply have chosen not to take off-duty rest breaks. Given all this, the resolution achieved represents an excellent result for the class.

### 3. Waiting Time Penalties

The strongest claims in this case were the meal and rest break claims, neither of which *conclusively* generates a "wage" to which a Labor Code § 203 claim could be tethered. The California Court of Appeal stated, *arguably in dicta*, that a meal break violation under Labor Code § 226.7 cannot support a "waiting time penalty" under Labor Code § 203. *Ling v. P.F. Chang's*

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
555 12TH STREET, SUITE 1725
OAKLAND, CA 94607
TEL: (510) 891-9800

-17-

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
555 12TH STREET, SUITE 1725
OAKLAND, CA 94607
TEL: (510) 891-9800

1  *China Bistro, Inc.*, 245 Cal.App.4th 1242, 1261 (2016); *Serrano v. Bay Bread LLC*, 2016 Cal.

2  Super. LEXIS 8043 at *22 (June 29, 2016) (no published California case holds contrary to *Ling*);

3  *Kirby v. Imoos Fire Protection, Inc.*, 53 Cal. 4th 1244 (2012) (failure to pay meal and rest period

4  premiums cannot trigger waiting time penalties); *but see*, *In re Autozone, Inc. Wage and Hour*

5  *Litig.*, Case No. 3:10-md-021590CRB, 2016 WL 4208200 at **6-7 (N.D. Cal. Aug. 10, 2016)

6  (meal period payments constitute "wages," thus, supporting Labor Code §§ 201-203 claims).

7  More recently, the California Supreme Court has granted review[24] in *Naranjo v. Spectrum*

8  *Security Services, Inc.* (No. S258966) 40 Cal.App.5th 444 (2020 Cal.App. LEXIS 167), to tackle

9  the question of whether a rest break violation supports an additional penalty under Labor Code §

10  203 and/or 226 or if this would constitute "penalties on penalties." Finally, Defendant would

11  contend that Representative Plaintiff could not show the requisite "willful[ness]" under § 203.

12  *Willner v. Manpower Inc.*, 35 F.Supp.3d 1116, 1131 (N.D. Cal. 2014); *Amaral v. Cintas Corp. No.*

13  *2,* 163 Cal.App.4th 1157, 1203-04 (2008) (holding the employer did not willfully fail to pay wages

14  under Labor Code § 203 even though the class prevailed on the merits on the underlying claim).

15  Based on a typical eight-hour workday, on records showing that over 167 class members

16  were "severed" employees, and that their average (weighted) hourly wage was $15.08,

17  Defendant's liability could reach as high as $450,000 for waiting time penalties. Given the state

18  of the law, and that an unrealistic full eight-hour workday was used to calculate this penalty for <u>all</u>

19  severed workers, the value of this claim was discounted ***significantly***.

20  **4. Wage Statement Violations**

21  Although some federal court decisions have held break premiums under Labor Code §

22  226.7 can support a wage statement penalty under Labor Code § 226(e), there are no published

23  California state court decisions issuing a similar holding. *Maldonado v. Epsiolon Plastics, Inc.,* 22

24  Cal.App.5th 1308, 1337 (2018) (meal and rest claims cannot support a class-wide claim for

25  inaccurate wage statements); *Finder v. Leprino Foods Co.*, No. 1:13-CV-2059 AWI-BAM, 2015

26

27  [24] Should the trial court stay the instant litigation, pending the Supreme Court's review of *Naranjo*, payments to class members would be further delayed.

28

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
555 12TH STREET, SUITE 1725
OAKLAND, CA 94607
TEL: (510) 891-9800

U.S. Dist. LEXIS 30652, at *1 (E.D. Cal. March 12, 2015). In light of the California authority explaining that a violation of Labor Code § 226.7 cannot support a § 203 waiting time penalty, the same logic may apply to § 226 wage statement penalties, making those entirely unrecoverable in this litigation. Had this matter not settled, Defendants would have certainly argued this, as well as contended Representative Plaintiff cannot establish an "injury" resulting from Defendants' "knowing and intentional failure" to furnish wage statements (i.e., that included premium pay for missed breaks). Cal. Lab. Code § 226(e)(1).

Under § 226, class members may recover $50.00 for the initial violation and $100.00 for each subsequent violation. Based on data provided by Defendant and subsequent analysis thereof by SCA, class members stood to potentially recover $200,000 if they fully prevailed on these claims at trial. Given the numerous elements Representative Plaintiff would be required to demonstrate, and anticipating Defendant's "penalties on penalties" argument, SCA's "reality check" and, thus, significant discount to the potential value of this claim, was appropriate. What's more, this analysis assumes the penalties for all class members would never have reached the §226 cap of $4,000—although numerous workers stayed with the company beyond the tipping point where their aggregated per-pay-period penalties would have reached that cap.

### 5. PAGA Penalties

Representative Plaintiff also alleged that Defendant's conduct created liability under PAGA. PAGA claims are extraordinarily difficult to evaluate because there are several obstacles to the actual award of the civil penalty. First, it is arguably unclear whether penalties continue to accrue until the court finds a violation to exist. Second, Labor Code § 2699(e)(1) and (2) give trial courts immense discretion to access or lower the penalty amount.[25] Indeed, several courts have exercised their broad discretion and have dramatically limited PAGA awards.[26] Third, defendants

---

[25] Cal. Labor Code § 2699(e)(2) (courts have discretion to deny or significantly reduce PAGA penalties, particularly when the prescribed award would be "unjust, arbitrary and oppressive, or confiscatory.")

[26] See e.g., *Fleming v. Covidien Inc.*, 2011 WL 7563047, at *3-4 (C.D. Cal. Aug. 12, 2011) (invoking § (e)(2) and reducing PAGA penalty award from $2.8 million to $500,000); *Makabi v. Gedalia*, No. BC468146, (L.A. Super. Ct. May 8, 2013) (trial court invoked § (e)(2) and declined to apply any PAGA penalties, despite finding that defendants violated PAGA); *Amaral v. Cintas*

-19-

routinely argue that, when other statutory penalties have been imposed, additional penalties under PAGA are unjust (e.g., in cases where damages are already "in play" based on underlying wage violation claims, as we have here).

Thus, while the PAGA calculation herein for approximately 1,980 pay periods could reach $380,000 (i.e., a calculation identical here to the one for § 226 penalties), the likelihood of that sum ever being awarded, or anything even close to it, is extremely slim. Despite this potential recovery, given that PAGA penalties would likely be deemed duplicative of other penalties awardable here, given the extreme "haircuts" many courts are giving to PAGA penalties, and given the presence here of class action allegations (the absence of which often being the reason so-called "Plan B" PAGA penalties are sought to begin with), PAGA penalties were significantly discounted.

### 6. Summary

In sum, assuming (liability and class certification) success on each of the claims, at the level hoped for by Representative Plaintiff, the claims could be as high as:

| HIGHEST "STARTING PLACE" VALUATIONS | | | | | |
|---|---|---|---|---|---|
| Meal Breaks | Rest Breaks | Waiting Time | Wage Statements | PAGA | TOTAL |
| ~440K | ~$1M | ~$450K | ~$200K | ~$380K | ~$2.4M |

However, based on SCA's conversations with the named plaintiff, knowledge of workflows and typical conditions within the hotel industry (with which SCA has vast experience), and analysis of Defendant's meal and rest break policies, a number of deductions would be appropriate from those totals, due to:

---

*Corp. No. 2*, 163 Cal.App.4th 1157 (2008) (approving reduction of penalty amount to one-third of the damages award even though there was "no evidence that Cintas [did] not entertain a good faith belief that the LWO did not apply to workers in Plaintiffs' position"); *Thurman v. Bayshore Transit Mgmt.*, 203 Cal.App.4th 1112, 1135-36 (2012) (reducing penalty amount by 30% where "defendants took their obligations under Wage Order No. 9 seriously and attempted to comply with the law); *Magadia v. Wal-Mart Associates, Inc.*, 384 F.Supp. 1058 (N.D. Cal. 2019).

Plaintiff's Motion for Preliminary Settlement Approval
Case No. 5:19-CV-03316-LHK

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
555 12TH STREET, SUITE 1725
OAKLAND, CA 94607
TEL: (510) 891-9800

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
555 12TH STREET, SUITE 1725
OAKLAND, CA 94607
TEL: (510) 891-9800

Meal/Rest Periods: Many workers worked below the threshold number of hours for meal or rest period entitlements, worked less than five days per week, and only missed breaks (when they did) out of choice or mis-punches. More likely, one to two violations per pay period is more realistic.

Waiting Time Penalties: If not all workers had meal/rest period violations to begin with, worked less than 8 hours per day, the starting place for this penalty analysis needs to be discounted.

Wage Statement Penalties: For the same reasons as those supporting a Waiting Time Penalty reduction, the top end/potential §226 penalty level should be reduced, even before a liability analysis for them begins.

PAGA: The penalties only apply if a predicate violation applies, which it oftentimes likely would not. Given that, the starting place for a PAGA analysis should be reduced.

Thus, *before even considering the likelihood of recovering these damages/penalties*, the analysis would look more like this:

| REALISTIC "STARTING PLACE" VALUATIONS | | | | | |
|---|---|---|---|---|---|
| Meal Breaks | Rest Breaks | Waiting Time | Wage Statements | PAGA | TOTAL |
| ~$100K | ~$100K | ~$150K | ~$75K | ~$75K | ~$450K |

Indeed, while, on its face, the total damages and penalties available to class members under either scenario are certainly higher than the settlement amount, so were the risks and delays inherent in protracted litigation. And further litigation wouldn't necessarily have tipped the scales in favor of either party since (a) significant discovery was already available to them and, as in all litigation, (2) both good and bad facts would inevitably have come to light for each side. What is certain, however, is that Argonaut would have fought the action very aggressively, thereby delaying the benefits now available through settlement to class members for quite some time.[27] As

---

[27] Note that *Augustus* was filed in 2005 and not resolved until 2017—*12 years after its inception*.

Plaintiff's Motion for Preliminary Settlement Approval
Case No. 5:19-CV-03316-LHK

a result, the extraordinary result of a *non-reversionary* $365,000.00 fund is more than reasonable when balanced against the risks of continued litigation.

## B. COMPARISON TO PAST DISTRIBUTIONS

As noted above, Class Counsel has handled well over 300 wage and hour class action cases.[28] The settlement in this case falls well within the normal range for similar settlement given the competing factors at unique to this case.[29] One such similar settlement occurred in *Thompson v. Trifecta JLS, Inc. et al.* (Case No. RG16832089) (hereinafter "*Thompson*"), filed in the Superior Court for the State of California, County of Alameda.[30] The *Thompson* case involved similar allegations at issue here.[31] In *Thompson*, the class members were restaurant/service employees, and Plaintiff alleged Defendants operated their restaurant "Plank" using consistent policies that resulted in various wage and hour violations against the restaurant employees, including unpaid wages, as well as missed meal and rest periods.[32] *Thompson* settled for a Gross Settlement amount of $375,000, which compensated 505 class members.[33] Although the specific facts of every case are different (including Class Counsel's analysis of liability and the likelihood of recovering under each theory), *Thompson* represents a settlement analogous to this case.[34] The results of the settlement and notice process are summarized as follows:[35]

- The *Thompson* court granted Preliminary Approval of the settlement on May 1, 2018.
- Notice was sent to 505 class members on May 11, 2018 via first class mail. After skip-trace and remailing occurred, 29 notices ultimately remained undeliverable.
- No claim form was required as this was an opt-out settlement. There were no opts outs and no objections.
- The average recovery per class member was $386.15.

---

[28] Cole Decl. ¶ 31.
[29] Cole Decl. ¶ 31.
[30] Cole Decl. ¶ 32.
[31] Cole Decl. ¶ 33.
[32] Cole Decl. ¶ 33.
[33] Cole Decl. ¶ 34.
[34] Cole Decl. ¶ 35.
[35] Cole Decl. ¶ 36.

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
555 12TH STREET, SUITE 1725
OAKLAND, CA 94607
TEL: (510) 891-9800

- The Cy Pres distribution was $44,161.72.
- The administrative costs for this settlement were $27,000.00
- The Court awarded attorneys fees of $125,000.00 (or 33 1/3 of the Gross Settlement Fund) on August 6, 2018. The court also awarded fees to Class Counsel in the amount of $18,565.36.

### C.   THE RISK, EXPENSE AND LIKELY DURATION OF FURTHER LITIGATION SUPPORTS SETTLEMENT

In evaluating for fairness, the Court should weigh the benefits of settlement against the expense and delay involved in achieving an equivalent or even more favorable result at trial. *Young v. Katz*, 447 F.2d 431, 433 (5th Cir. 1971); *Kullar*, 168 Cal.App.4th 116 (2008). As California jurists have recognized, there exists "an overriding public policy favoring settlement of class actions." *Ferguson v. Lieff, Cabraser, Heimann & Bernstein*, 30 Cal.4th 1037, 1054 (2003) (citing *Franklin v. Kayrpo Corp.*, 884 F.2d 1222, 1229 (9th Cir. 1989) ("public policy favor[s] the compromise and settlement of disputes")). The alternative to a class action, namely, numerous individual actions, could tax private and judicial resources for years. Given the relatively modest, though not inconsequential, amount of damages Settlement Class Members allegedly incurred, it would be uneconomical even for those with the resources to secure individual legal representation. Here, however, the settlement provides *all* Settlement Class Members, regardless of their means, the opportunity of monetary recovery in a prompt and efficient manner, without the risk of the Court denying class certification and these workers potentially recovering nothing at all.

SCA considered that, even if Representative Plaintiff prevailed on both class certification and liability, the process could be lengthy and costly, potentially including appeals. As with most complex litigation, wage and hour class action certification rarely ends with a certification ruling. Class action defendants may seek a writ of mandate from an order granting class certification. *See,* Cal. Code Civ. Proc. § 904.1; *In re Cipro Cases I and II*, 121 Cal.App.4th 402, 409 (2004), and subsequent decertification is often sought. Moreover, the losing party often takes an appeal after

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
555 12TH STREET, SUITE 1725
OAKLAND, CA 94607
TEL: (510) 891-9800

disposition of liability and/or damages. Even a successful judicial resolution at the trial court level can be just the beginning of a lengthy, expensive process, stalling payments to class members for years.[36] This judicial purgatory is compounded by the risk of an adverse appellate ruling, which would remand the action to the trial court for further litigation, possibly with negative precedent.[37] As such, the complexity, expense, and delay of continued litigation supports approval of this settlement.

IV.    **CLASS ACTION SETTLEMENT APPROVAL PROCEDURE**

Pursuant to Federal Rule of Civil Procedure 23(e), "[t]he claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval." Fed. R. Civ. Proc. § 23(e). Before a court approves a settlement, it must conclude that the settlement is "fundamentally fair, adequate and reasonable." *In re Heritage Bond Litig.*, 546 F.3d 667, 674-75 (9th Cir. 2009). Generally, the district court's review of a class action settlement is "extremely limited." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998). The court considers the settlement as a whole, rather than its components, and lacks authority to "delete, modify or substitute certain provision." *Id.* (quoting *Officers for Justice v. Civil Serv. Comm'n of San Francisco*, 688 F.2d 615, 630 (9th Cir. 1982)).

At the preliminary approval stage, the court may grant preliminary approval of a settlement and direct notice to the class if the settlement: (1) appears to be the product of serious, informed, non-collusive negotiations, (2) has no obvious deficiencies, (3) does not improperly grant preferential treatment to the class representative or segments of the class, and (4) falls within the range of possible approval. *See Alvarado v. Nederend*, 2011 WL 90228, *5 (E.D. Cal. Jan. 11, 2011) (granting preliminary approval of settlement in wage and hour class action); *Collins v.*

---

[36] Consider, for example, the plight of the employee-class members in *Savaglio v. Wal-Mart Stores, Inc.*, Case No. C-835687 (Alameda Super. Ct.). Following four years of litigation and a four-month jury trial, in 2005, a $172 million verdict was entered against Wal-Mart on behalf of over 116,000 class members. Those aggrieved employees, however, did not receive any remuneration until 2011, more than five years later.

[37] *See, e.g., Chau v. Starbucks Corp.*, 174 Cal.App.4th 688 (2009) (appellate court reversed an $86 million restitution award to a certified class of hourly employees).

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
555 12TH STREET, SUITE 1725
OAKLAND, CA 94607
TEL: (510) 891-9800

1  *Cargill Meat Solutions Corp.*, 274 F.R.D. 294, 302-303 (E.D. Cal. 2011) (granting preliminary

2  approval of settlement in wage and hour class action); Joseph M. McLaughlin, *McLaughlin on*

3  *Class Actions: Law and Practice* § 6.6 (7th ed. 2011) ("Preliminary approval is an initial evaluation

4  by the court of the fairness of the proposed settlement, including a determination that there are no

5  obvious deficiencies such as indications of a collusive negotiation, unduly preferential treatment

6  of class representatives or segments of the class, or excessive compensation of attorneys . . . .").

7  As each of these factors is met here, preliminary approval is appropriate.

8      A.    **THE SETTLEMENT AMOUNT REPRESENTS A SUBSTANTIAL**

9            **RECOVERY**

10         Plaintiff's counsel estimated the maximum potential recovery, including unpaid wages,

11  interest and penalties, for the certified claims to be approximately $2.4M which specifically

12  contemplates 2 violations per week for meal periods and 5 violations per week for rest periods,

13  interest, and PAGA penalties. (*See* Cole Decl. ¶ 15-19).

14         The $365,000.00 Maximum Settlement Amount represents over 15% of that total amount.

15  The amount of unpaid wages exclusive of interest and penalties is approximately $1.5M, meaning

16  the settlement represents almost 24% of that amount.

17         The significant risk that this Court may deny class certification is obviated by the

18  Settlement. Moreover, continued litigation would very likely reduce and substantially delay

19  recovery by Class Members. In contrast, because of the proposed Settlement, Class Members will

20  receive timely relief and avoid the risk of an unfavorable judgment.

21         Furthermore, while Plaintiff is confident in the merits of the case, a legitimate controversy

22  exists as to each claim for relief. Plaintiff also recognizes that proving the amount of wages due to

23  each individual Class Member would be an expensive, time-consuming, and extremely uncertain

24  proposition.

25

26

27

28

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
555 12TH STREET, SUITE 1725
OAKLAND, CA 94607
TEL: (510) 891-9800

1

**B.**    **THE PROPOSED PAGA PAYMENT TO THE LWDA IS REASONABLE**

2    PAGA claims are commonly approved where the gross settlement amount, and monies due

3 to employees as compensatory damages and restitution, vastly outsize the amounts earmarked for

4 the LWDA under PAGA:

5    • *Nordstrom Commission Cases* 186 Cal.App.4th 576 (Ct. App. 2010) ($6.405 million cash

6        and $2.5 million Nordstrom merchandise vouchers gross settlement; $0 in PAGA

7        penalties);

8    • *Barnwell v. Pacific Ocean Transportation, Inc.* (May 31, 2016) Los Angeles Superior

9        Court, Case No. BC555412 ($110,000.00 gross settlement; $1,500.00 in PAGA Penalties;

10        June 6, 2018 Non-Appearance Case Review re: Distribution);

11    • *Ambrose v. Associated Ready Mixed Concrete, Inc.* (Oct. 19, 2015) Los Angeles Superior

12        Court, Case No. BC598309 ($300,000.00 gross settlement; $750.00 in PAGA Penalties;

13        June 8, 2017 Judgment; No Future Hearings);

14    • *Baumann v. Chased Investments Services Corp., et al.* (July 8, 2011) Los Angeles Superior

15        Court, Case No. BC465806 ($4,500,000.00 gross settlement; $37,500.00 in PAGA

16        Penalties; June 27, 2017 Order re: Amended Judgment Signed Filed; No Future Hearings);

17    • *Allen v. Caine & Weiner Company, Inc.* (July 19, 2011) Los Angeles Superior Court, Case

18        No. BC464979 ($150,000.00 gross settlement; $2,000.00 in PAGA Penalties; Apr. 23,

19        2014 Judgment; No Future Hearings);

20    • *Murphy v. CVS Caremark Corporation, et al* (July 5, 2011) Los Angeles Superior Court,

21        Case No. BC464785 ($12,750,000.00 gross settlement; $50,000.00 in PAGA Penalties;

22        Feb. 28, 2017 Judgment; No Future Hearings);

23    • *Baker, et al. v. L.A. Fitness International, LLC* (May, 28, 2010) Los Angeles Superior

24        Court, Case No. BC464785 ($5,500,000.00 gross settlement; $18,750.00 in PAGA

25        Penalties; Dec. 12, 2012 Judgment; No Future Hearings);

26    • *Garcia v. Gordon Trucking, Inc., et al* (Feb. 23, 2010), United States District Court, Eastern

27        District of California, Case No. 1:10-cv-00324-AWI-SKO ($3,700,000.00 gross

28

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
555 12TH STREET, SUITE 1725
OAKLAND, CA 94607
TEL: (510) 891-9800

-26-
Plaintiff's Motion for Preliminary Settlement Approval
Case No. 5:19-CV-03316-LHK

1    settlement; $7,500.00 in PAGA Penalties; Oct. 31, 2012 Judgment; Oct. 31, 2012 Case

2    Closed);

3    • *Franco, et al v. Ruiz Food Products, Inc.* (Dec. 15, 2010) United States District Court,

4    Eastern District of California, Case No. 1:10-cv-02354-SKO ($2,500,000.00 gross

5    settlement; $7,500.00 in PAGA Penalties; May 31, 2012 Judgment; May 31, 2012 Case

6    Closed);

7    • *Rodriguez v. Kraft Foods Group, Inc.* (July 18, 2014) United States District Court, Eastern

8    District of California, Case No. 1:14-cv-01137-LJO-EPG ($1,750,000.00 gross settlement;

9    $5,625.00 in PAGA Penalties; Dec. 20, 2016 Judgment; Dec. 20, 2016 Case Closed].)

10   In fact, PAGA penalties are entirely discretionary, and should not be awarded where it

11   would work a hardship on the Class Members (less money available to the Class) or be overly

12   punitive to the employer. Labor Code § 2699(e)(2): "In any action by an aggrieved employee

13   seeking recovery of a civil penalty available under subdivision (a) or (f), a court may award a lesser

14   amount than the maximum civil penalty amount specified by this part if, based on the facts and

15   circumstances of the particular case, to do otherwise would result in an award that is unjust,

16   arbitrary and oppressive, or confiscatory." Given the good faith defenses Defendant has made, the

17   maximum award would be unduly punitive and not justifiable under these facts. It should also be

18   kept in mind that PAGA penalties inure to the State, not Class Members to whom the Court owes

19   a fiduciary duty. The parties are not aware of any authority conferring a fiduciary relationship

20   between the Court and the State of California; rather this would conflict with the Court's fiduciary

21   duty to absent Class Members.

22   In sum, when the risks of litigation, the uncertainties involved in achieving class

23   certification, the burdens of proof necessary to establish liability, and the probability of appeal of

24   a favorable judgment are balanced against the merits of Plaintiffs' claims, it is clear that the

25   settlement amount is fair, adequate, and reasonable—a substantial recovery for the Class Members.

26

27

28

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
555 12TH STREET, SUITE 1725
OAKLAND, CA 94607
TEL: (510) 891-9800

-27-

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
555 12TH STREET, SUITE 1725
OAKLAND, CA 94607
TEL: (510) 891-9800

## C. THE SETTLEMENT WAS REACHED AFTER INFORMED, ARM'S LENGTH NEGOTIATIONS

The Settlement was reached following a full-day mediation session with an experienced mediator, Ms. Lisa Klerman. Even then, the Parties continued to negotiate specific terms, structure, and procedural issues for weeks thereafter.[38] These circumstances involved no collusion and show that the settlement negotiations were arm's length and, although conducted in a professional manner, were adversarial. *Id.* The Parties went into the mediation willing to explore the potential for a settlement of the dispute, but Plaintiff submits that the record in this case shows that each side was committed and prepared to litigate its position through trial and appeal if a settlement had not been reached.

Plaintiff also conducted extensive investigation and informal discovery prior to the mediation. Prior to filing the complaint, Plaintiff's counsel conducted an investigation into the claims alleged, including interviewing Plaintiff and other employees, reviewing documents provided by Plaintiff and other publicly-available documents, and conducting legal research regarding the claims and defenses. Based on the information and record developed through extensive investigation and informal discovery, Plaintiff's counsel was able to act intelligently and effectively in negotiating the proposed Settlement.

## D. THE SETTLEMENT DOES NOT SUFFER FROM ANY OBVIOUS DEFICIENCIES

The second factor the Court considers is whether there are obvious deficiencies in the settlement. Under the terms of the Settlement, Defendant will pay $365,000.00 to resolve this Action. This is a substantial recovery for the Class Members, which takes into consideration the significant risks of proceeding with the litigation, including the risks of maintaining class certification, establishing liability and proving damages, as discussed further below. When the risks of litigation, the uncertainties involved, the burdens of proof necessary to establish liability, and the probability of appeal of a favorable judgment are balanced against the merits of Plaintiff's

---

[38] Cole Decl. ¶ 7

1    claims, it is clear that the settlement amount is fair, adequate, and reasonable and that there no

2    deficiencies in the proposed Settlement.

3    **E.    PLAINTIFF'S SERVICE AWARD IS APPROPRIATE**

4           Under the third factor, the Court examines whether the proposed settlement provides

5    preferential treatment to any class member or segment of the class.

6           Subject to Court approval, the Settlement provides for a service award to Plaintiff in an

7    amount not to exceed $2,500.00.[39] This modest payment is for the substantial risk assumed by and

8    the services undertaken by Plaintiff, as well as the substantial benefit conferred on the class as a

9    result of Plaintiff's efforts.[40] The Ninth Circuit has recognized that service awards to named

10   plaintiffs in a class action are permissible and do not render a settlement unfair or unreasonable.

11   *See Staton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003); *Rodriguez v. West Publ'g Corp.*, 563

12   F.3d 948, 958-69 (9th Cir. 2009) (finding that the payment of a service award is "fairly typical in

13   class actions."). Finally, the Court will ultimately determine whether Plaintiff is entitled to the

14   requested service award based on the reasonableness of the amount requested in ruling on

15   Plaintiff's Motion for Final Approval, in which Plaintiff will submit additional declarations

16   outlining the efforts expended and risks taken on behalf of the Class Members. *See Harris v. Vector*

17   *Mktg. Corp.*, No. C-08-5198 EMC, 2011 WL 1627973, *9 (N.D. Cal. Apr. 29, 2011). Thus, the

18   absence of any preferential treatment supports preliminary approval.

19

20   **F.    THE SETTLEMENT ADMINISTRATOR IS APPROPRIATE**

21          The parties have agreed to use Simpluris as the proposed settlement administrator for this

22   case. Plaintiff's counsel contacted two well-known settlement administrators seeking competitive

23   bids before selecting Simpluris as the best choice. The method of notice proposed was a mailing

24   with no requirement for processing claims forms. Class Counsel has engaged this settlement

25   administrator 4 times in the last two years. The capped fee offered by Simpluris is $7,499. This

26   _____

27   [39] Exhibit "A," Settlement ¶ 35.
     [40] Plaintiff also executed a separate severance agreement which had no bearing on the class claims.

28

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
555 12TH STREET, SUITE 1725
OAKLAND, CA 94607
TEL: (510) 891-9800

1  amount is reasonable given the number of people in the class and the value of the settlement. The

2  fee falls within the typical amount charged by settlement administrators for this type and size of

3  class action settlement based on the experience of Class Counsel. The cost for the administration

4  will be taken out of the Gross Settlement Amount.

6        **G.**    **THE SETTLEMENT FALLS WITHIN THE RANGE OF POSSIBLE**

7           **APPROVAL**

8       Finally, the Court must consider whether the settlement falls within the range of possible

9  approval. "To evaluate the range of possible approval criterion, which focuses on substantive

10  fairness and adequacy, courts primarily consider plaintiffs' expected recovery balanced against the

11  value of the settlement offer." *Vasquez v. Coast Valley Roofing, Inc.*, 670 F.Supp.2d 1114, 1125

12  (E.D. Cal. 2009) (citing *In re Tableware Antitrust Litig.*, 484 F.Supp.2d 1078, 1080 (N.D. Cal.

13  2007) (internal quotations omitted).

14       While there are, not surprisingly, different viewpoints of the strengths and weaknesses of

15  the claims, the belief of Class Counsel is that the maximum potential recovery to the Class

16  Members is nearly $2.4 Million should the case proceed to trial. And yet, as this Court well knows,

17  numerous hurdles stand in the way of such a remarkable result, including the risks of achieving

18  and maintaining class certification (particularly after *Epic Systems*), and establishing liability and

19  proving damages. Those realities, coupled with the probability of appeal of a favorable judgment

20  and the time-value of money to the Class members, must be balanced against the merits of

21  Plaintiff's claims. When doing that balancing, it is clear that a $365,000.00 non-reversionary

22  settlement sum is within the range of likely approval.

23       Furthermore, given the lack of records for rest breaks, establishing damages would be

24  difficult. While Plaintiff maintains that both liability and the amounts of premium wages due for

25  missed meal and rest periods may be determined using representative sampling, any proposed

26  methodology would be subject to attack by Defendant in ways that could limit any recovery.

1    Plaintiffs' claims for penalties under Labor Code §§ 226 and 203 are derivative of the meal

2  and rest break claims. The recent decision in *Naranjo v. Spectrum Security Servs.* 40 Cal. App. 5th

3  444 (Ct. App. 2019) stated that these penalties are unavailable when they are solely based on

4  penalties under Labor Code §§ 226.7 and 512. Although the California Supreme Court has granted

5  a petition for review of this case, it has not stayed the decision. Therefore, the value of these claims

6  was discounted to virtually nothing.

7    Finally, continued litigation would inevitably delay payment to the Class Members. The

8  fact that a settlement will eliminate delay and further expenses strongly weighs in favor of

9  approval. *See Rodriguez*, 563 F.3d at 966.

10

11  **V.    CONDITIONAL CERTIFICATION REQUIREMENTS ARE MET**

12    "When considering whether to give approval to a proposed class action settlement, Federal

13  Rule of Civil Procedure 23(e) 'require[s] the district court to determine whether a proposed

14  settlement is fundamentally fair, adequate, and reasonable.' *In re Celera Corp. Sec. Litig.*, No.

15  5:10-CV-02604-EJD, 2015 WL 1482303, at *3 (N.D. Cal. Mar. 31, 2015) (citing *In re Mego Fin.*

16  *Corp. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000)).

17  **A.    THE CLASS IS SUFFICIENTLY NUMEROUS**

18    Rule 23(a)(1) requires that a proposed class be so numerous that joinder of all class

19  members be impracticable. *Hanlon*, *supra*, 150 F.3d at 1019; *Gay v. Waiters' & Dairy Lunchmen's*

20  *Union*, 489 F. Supp. 282 (N.D. Cal. 1980), *aff'd* 694 F.2d 531 (9th Cir. 1982). The Ninth Circuit

21  has stated that numerosity could be satisfied by a class with 174 members, in part because of the

22  "small size of each class member's claims." *Jordan v. County of Los Angeles*, 669 F.2d 1311, 1319

23  (9th Cir. 1982), *vacated on other grounds*, 509 U.S. 810, 113 S.Ct. 2891, 2916 (1982).

24    Here, the Class consists of approximately 420 employees, which is sufficiently numerous

25  for settlement purposes. With these numbers, joinder of all Class Members would be

26  impracticable, and the relatively small value of each individual claim makes it unlikely that the

27

28

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
555 12TH STREET, SUITE 1725
OAKLAND, CA 94607
TEL: (510) 891-9800

1   individual claimants would pursue relief absent class certification, diminishing the prospect that
2   joinder is a feasible alternative.

3   **B.    THE COMMONALITY REQUIREMENT IS MET**

4   Under Federal Rule of Civil Procedure 23(a)(2), Plaintiffs must show that there is a
5   question of law or fact common to the settlement class, using a permissive standard. *Hanlon*, 150
6   F.3d at 1011, 1019-20 (9th Cir. 1998) (emphasizing the "minimal" requirements and "permissive"
7   interpretation of Rule 23(a)(2)).

8   Plaintiffs may satisfy the commonality requirement by demonstrating either a common
9   legal issue with divergent factual predicates or a common nucleus of facts with divergent legal
10  remedies. *See Hanlon*, 150 F.3d at 1019. The presence of merely one common issue of law or fact
11  is sufficient. *See Haley v. Medtronic, Inc.*, 169 F.R.D. 643, 648 (C.D. Cal. 1996); *Slaven v. BP*
12  *Am., Inc.*, 190 F.R.D. 649, 655 (C.D. Cal. 2000).

13  Class Members here suffered the same alleged injuries in the same manner; Class Members
14  were deprived of meal/rest periods because of Defendant's common policies requiring a high level
15  of attention to guests. All of these improper policies applied unilaterally to all non-exempt
16  employees in the Class. As a result of these objectionable policies and practices, Plaintiff and Class
17  Members had been injured.

18  Defendant's policies and procedures among others give rise to the following common
19  questions of law and fact:

20  ● Whether Defendant violated California Labor Code § 226.7 and/or 512 by failing to
21     provide off-duty meal breaks;

22  ● Whether Defendant violated California Labor Code § 226.7 and by failing to provide off-
23     duty rest breaks;

24  ● Whether Defendant violated Labor Code § 226(a) by failing to provide Class Members
25     with accurate itemized statements including total hours worked and all applicable hourly
26     rates in effect during the pay period;

27
28

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
555 12TH STREET, SUITE 1725
OAKLAND, CA 94607
TEL: (510) 891-9800

1    • Whether Defendant violated Labor Code § 203 by failing to pay wages upon termination

2    or resignation;

3    • Whether Defendant violated Business and Professions Code § 17200, et seq. by engaging

4    in unfair, unlawful and/or fraudulent business practices; and

5    • Whether the Representative Plaintiffs and Class Members are entitled to penalties under

6    the Private Attorney General Act of 2004, California Labor Code § 2698, et seq.

7    Under these specific circumstances, the commonality requirement is satisfied. *Hanlon*, at

8    1019-20; *Gutierrez v. Kovacevich "5" Farms*, 2004 WL 3745224, at *5 (E.D. Cal. Dec. 2, 2004)

9    (finding commonality satisfied where plaintiffs presented common questions of whether

10   defendants failed to pay plaintiffs for all time worked); *see Rainbow Bus. Solutions v. Merch.*

11   *Servs*, 2013 U.S. Dist. LEXIS 179288, *15 (N.D. Cal. 2013) (shared legal issues with divergent

12   factual predicates sufficient for class certification); *Tierno v. Rite Aid Corp.*, 2006 U.S. Dist.

13   LEXIS 71794 (N.D. Cal. Aug. 31, 2006) (certifying a class of retail store managers with common

14   wage and hour claims).

15   **C.    THE TYPICALITY REQUIREMENT IS MET**

16   The typicality requirement of Rule 23(a)(3) is met if the claims of the named representative

17   are typical of those of the class, though "they need not be substantially identical." *Hanlon*, 150

18   F.3d at 1020. In deciding whether individual variations preclude typicality, the focus should be on

19   the behavior of the defendants. *Day v. NLO*, 851 F.Supp. 869, 884 (S.D. Ohio 1994). Plaintiff's

20   claims are typical of the claims of the whole class because they arise from the same factual basis

21   and are based on the same legal theories as those applicable to the other class members. *See Wehner*

22   *v. Syntex Corp.*, 117 F.R.D. 641, 644 (N.D. Cal. 1987).

23   Plaintiff, like the other Class Members, was a non-exempt worker subject to the same

24   employment policies and procedures concerning meal and rest periods. Although the class

25   encompasses several job titles, all Class Members were subject to the same service expectations

26   and policies. Thus, the claims of Plaintiff and Class Members arise from the same course of

27   conduct by Defendant, involve the same employment practices, and the same legal theories.

28

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
555 12TH STREET, SUITE 1725
OAKLAND, CA 94607
TEL: (510) 891-9800

-33-

1    As a result of Defendant's policies Plaintiff worked without compensation in the same

2    manner as all the other Class Members. Thus, the typicality requirement is also satisfied.

3

4    **D.    THE ADEQUACY REQUIREMENT IS MET**

5    The adequacy requirement of Rule 23(a)(4) is met if the Class Representative and Class

6    Counsel have no interests adverse to the interests of the Class Members and are committed to

7    vigorously prosecuting the case on behalf of the class. *Hanlon*, 150 F.3d at 1020.

8    At all times, Plaintiff served unselfishly as the champion of the Class, there are no facts

9    suggesting that either Plaintiff or Class Counsel have any potential or actual conflicts of interests

10   with the Class Members. Plaintiff is well aware of his duties as the representative of the Class and

11   actively participated in the prosecution of this case to date. He effectively communicated with

12   Class Counsel, providing documents to Class Counsel and participated extensively in discovery

13   and investigation of the Action. Plaintiff also retained competent counsel who have extensive

14   experience in employment class actions. Class Counsel has extensive experience in class action

15   litigation in California. In addition, there is no antagonism between the interests of the Plaintiff

16   and those of the Class.

17   **E.    COMMON ISSUES PREDOMINATE OVER INDIVIDUAL ISSUES**

18   In addition to the Rule 23(a) requirements, a Court must also find that common issues of

19   law or fact predominate over any questions affecting only individual members." Fed. R. Civ. P.

20   Rule 23(b).

21   Class certification is authorized where common questions of law and fact predominate over

22   individual questions. *Hanlon*, 150 F.3d at 1022-23. The test is whether the proposed class is

23   sufficiently cohesive to warrant adjudication by representation. The proposed class in this case is

24   sufficiently cohesive because all Class Members' claims share a "common nucleus of facts and

25   potential legal remedies," as was present in *Hanlon*, where the Ninth Circuit approved class

26   certification under the standards set forth in *Amchem Products v. Windsor*, 521 U.S. 591, 117 S.Ct.

27   2231 (1997).

28

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
555 12TH STREET, SUITE 1725
OAKLAND, CA 94607
TEL: (510) 891-9800

-34-

1        In the context of wage and hour litigation, courts have often found that common issues

2   predominate where an employer treats the putative class members uniformly, even where the party

3   opposing class certification presents evidence of individualized variations. *See e.g. Ghazaryan v.*

4   *Diva Limousine, Ltd.*, 169 Cal. App. 4th 1524, 1538 (2008) (wage and hour claims "routinely

5   proceed as class actions"); *Prince v. CLS Transportation, Inc.*, 118 Cal.App.4th 1320, 1329

6   (2004); and, *Estrada v. FedEx Ground Package System, Inc.*, 154 Cal.App.4th 1, 14 (2007).

7        There are common issues of law and fact that Plaintiff and all Class Members were

8   subjected to in this case. The principal issues of controversy include whether class members

9   received all proper meal and rest periods. Plaintiff contends that Defendant engaged in a uniform

10  course of conduct with respect to the employees which resulted in a systematic failure to provide

11  breaks benefits as required by law and that Defendant's policies with respect to these issues are

12  uniform. These issues are suitable for common adjudication because the liability question and

13  defenses for all Class Members are the same. Class Members all worked in the service of

14  Defendant's guests during the relevant time period and were subject to the same employment

15  policies and practices. The only question is whether Defendant's conduct supports a meritorious

16  claim for liability. Such suits challenging the legality of a standardized course of conduct are

17  generally appropriate for resolution by means of a class action. Accordingly, common issues of

18  law and fact predominate.

19  **F.    CLASS SETTLEMENT IS SUPERIOR TO OTHER METHODS OF**

20  **RESOLUTION**

21       To certify a class, the Court must also determine "that a class action is superior to other

22  available methods for the fair and efficient adjudication of the controversy." F.R.C.P. Rule

23  23(b)(3). To determine the issue of "superiority," Rule 23(b)(3) enumerates the following factors

24  for courts to consider:

25       (A) [T]he interest of members of the class in individually controlling the
     prosecution . . . of separate actions; (B) the extent and nature of any litigation

26   concerning the controversy already commenced by . . . members of the class; (C)
     the desirability . . . of concentrating the litigation of the claims in the particular

27

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
555 12TH STREET, SUITE 1725
OAKLAND, CA 94607
TEL: (510) 891-9800

28

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
555 12TH STREET, SUITE 1725
OAKLAND, CA 94607
TEL: (510) 891-9800

1    forum; and (D) the difficulties likely to be encountered in the management of a
2    class action. Fed. R. Civ. Prov. Rule 23(b)(3)(A)-(C).

3    Particularly in the settlement context, class resolution is superior to other available methods
4    for the fair and efficient adjudication of the controversy. *See Hanlon*, 150 F.3d at 1023. Here, the
5    alternative methods of resolution are individual suits for relatively small amounts. These claims
6    "would prove uneconomic for potential plaintiffs" because "litigation costs would dwarf potential
7    recovery." *Hanlon*, 150 F.3d at 1023.

8    There is little interest or incentive for Class Members to individually control the
9    prosecution of separate actions. Although the injury resulting from Defendant's policies and
10   practices are real and significant, the cost of individually litigating such a case against Defendant
11   would easily exceed the value of any relief that could be obtained by any one Class Member
12   individually. (Id.) Each Class Member's individual claim is too small to justify the potential
13   litigation costs that would be incurred by prosecuting these claims individually. *See Local Joint*
14   *Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas*, 244 F.3d 1152, 1163 (9th Cir. 2001)
15   (holding class member's individual recovery of about $1,330 was small and that if plaintiffs cannot
16   proceed as a class, some—perhaps most—will be unable to proceed as individuals).

17   In addition, because the claims of each Class Member in this case are virtually identical,
18   no one member of the Class would have a materially greater interest in controlling the litigation.
19   *See Westways World Travel, Inc. v. AMC Corp.*, 218 F.R.D. 223, 240 (C.D. Cal. 2003). Further,
20   Plaintiff is unaware of any other similar actions.

21   Finally, the question here is whether "reasonably foreseeable difficulties render some other
22   method of adjudication superior to class certification." *In Re Prudential Ins. Co. of Am. Sales*
23   *Practice Litig.*, 962 F.Supp. 450, 525 (D. N.J. 1997).

24   As the Supreme Court has held, manageability will not foreclose certification for settlement
25   purposes. *See Amchem Prods., Inc. v. Windsor*, *supra*, 521 U.S. at 560 ("Confronted with a request
26   for settlement-only class certification, a district court need not inquire whether the case, if tried,
27   would present intractable manageable problems, *see* Fed. R Civ. Proc., Rule 23(b)(3)(D), for the
28

-36-
Plaintiff's Motion for Preliminary Settlement Approval
Case No. 5:19-CV-03316-LHK

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
555 12TH STREET, SUITE 1725
OAKLAND, CA 94607
TEL: (510) 891-9800

1    proposal is that there be no trial."). Therefore, there are no serious manageability difficulties

2    presented by preliminarily approving the case for settlement purposes. As this case will not go to

3    trial if finally approved, all that would remain is claims administration and responding to possible

4    objectors. For these reasons, this matter should be certified for settlement purposes.

5

6          **VI.    STATEMENT REGARDING THE NOTICE PACKET**

7          Adequate notice is critical to court approval of a class settlement under Rule 23(e). *Hanlon*,

8    150 F.3d at 1025. The threshold requirement concerning the sufficiency of class notice is whether

9    the means employed to distribute the notice is reasonably calculated to apprise the class of the

10   pendency of the action, of the proposed settlement, and of the class members' rights to opt out or

11   object. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173-74 (1974). In this Circuit, notice is

12   satisfactory if it "generally describes the terms of the settlement in sufficient detail to alert those

13   with adverse viewpoints to investigate and to come forward and be heard." *Churchill Vill., L.L.C.*

14   *v. GE*, 361 F.3d 566, 575 (9th Cir. 2004) (citing *Mendoza v. United States*, 623 F.2d 1338, 1352

15   (9th Cir. 1980)).

16         The Notice of Settlement satisfies these content requirements. The notice is written in

17   simple, straightforward language that, among other things, includes: (1) basic information about

18   the Action, (2) a description of the benefits provided by Settlement, (3) an explanation of how

19   Class Members can obtain benefits under the Settlement, (4) an explanation of how Class Members

20   can exercise their right to object to the Settlement, (5) an explanation that any claims against

21   Defendants that could have been litigated in this action will be released if the Class Member does

22   not request exclusion from the Settlement, (6) the names of Class Counsel and information

23   regarding the requested attorneys' fees and expenses and Plaintiff's service payment, (7) the Final

24   Approval Hearing date, (8) an explanation of eligibility for appearing at the Final Approval

25   Hearing, and (9) contact information to obtain additional information.[41] As the Notice of

26   Settlement provides Class Members with sufficient information to make an informed and

27   _____
     [41] Exhibit "C," Class Notice

28
                                                    -37-

1    intelligent decision about the Settlement, it satisfies the content requirements of Rule 23(e) and

2    satisfies all due process requirements. *See In re Wells Fargo Loan Processor Overtime Pay Litig.*,

3    2011 WL 3352460, at *4 (N.D. Cal. Aug. 2, 2011); *Rodriguez*, 563 F.3d at 963 (where class notice

4    communicated the essentials of the proposed settlement in a sufficiently balanced, accurate, and

5    informative way, it satisfied due process concerns).

6         Additionally, the Settlement Administrator shall mail copies of the Class Notice Packet to

7    all Class Members via regular First-Class U.S. Mail. Agreement and post the notice and approval

8    documents online on a dedicated website.[42] Direct mail notice to Class Members' last known

9    addresses is the best notice possible under the circumstances. *See Mullane v. Central Hanover*

10   *Bank & Trust Co.*, 339 U.S. 306, 319 (1950); *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173-76

11   (1974). In sum, the contents and plan for dissemination of the Notice Packet constitute the best

12   notice practicable under the circumstances and fully comply with the requirements of Rule 23.

13

14   **VII.    CLASS COUNSEL'S REQUEST FOR ATTORNEYS' FEES**

15        At Final Approval, Class Counsel will request an award of attorneys' fees of 25% of the

16   Gross Settlement Sum or $91,250. Common Fund awards are appropriate in these types of cases,

17   and are routinely used. In addition to the common fund calculation, a cross-check of counsel's

18   lodestar also supports this award. As of October 12, 2020, Class Counsel's lodestar was

19   $176,204.00. The lodestar represents 309 hours of work done by Class Counsel in this case. The

20   fee requested is less than this amount and therefore would not represent any multiplier on this

21   amount. This amount does not include future work Class Counsel will do to effectuate this

22   settlement including appearing for hearings on the Motion for Preliminary Approval and the

23   Motion for Final Approval, facilitation of the notice process including calls from class members

24   (which are very common) and oversight of the compliance with the Order granting Final Approval

25   and further compliance hearings as ordered by the Court. With regard to expenses, Class Counsel

26   will seek reimbursement for a total of $6,618.29 in costs.

27   ---
     [42] Exhibit "A," Settlement ¶ 49

28

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
555 12TH STREET, SUITE 1725
OAKLAND, CA 94607
TEL: (510) 891-9800

1

2   **VIII.   SCHEDULING A FINAL APPROVAL HEARING IS APPROPRIATE**

3           The final step in the settlement approval process is a final fairness hearing at which the

4   Court may hear all evidence and arguments necessary to make its evaluation regarding the

5   Settlement. *MCL* § 21.63 at 447-50. Plaintiff requests that the Court set a date for hearing on final

6   approval at a time convenient for the Court, approximately 90 days after preliminary approval.

7

8   **IX.     CONCLUSION**

9           For the foregoing reasons, the Court should grant preliminary approval of the proposed

10  Settlement.

11

12  Dated: October 26, 2020                            **SCOTT COLE & ASSOCIATES, APC**

13

14                                           By:    _/s/ Laura Van Note_
                                                    Laura Van Note, Esq.
15                                                  Attorneys for Representative Plaintiff,
                                                    Aggrieved Employees and the Plaintiff Class
16

17

18

19

20

21

22

23

24

25

26

27

28

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
555 12TH STREET, SUITE 1725
OAKLAND, CA 94607
TEL: (510) 891-9800