Scott Edward Cole, Esq. (S.B. #160744)
Laura Grace Van Note, Esq. (S.B. #310160)
**SCOTT COLE & ASSOCIATES, APC**
555 12th Street, Suite 1725
Oakland, California 94607
Telephone: (510) 891-9800
Facsimile: (510) 891-7030
Email: scole@scalaw.com
Email: lvannote@scalaw.com
Web: www.scalaw.com

Attorneys for Representative Plaintiff(s), *et al.*

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
555 12TH STREET, SUITE 1725
OAKLAND, CA 94607
TEL: (510) 891-9800

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

MORGAN MCSHAN, individually, and on behalf of all others similarly situated,

Plaintiff,

vs.

HOTEL VALENCIA CORPORATION and DOES 1 through 100, inclusive,

Defendants.

**Case No. 5:19-CV-03316-LHK**

**CLASS ACTION**

**NOTICE OF MOTION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR AN ORDER:**

**(1) GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT;**
**(2) AWARDING ATTORNEYS' FEES AND COSTS TO CLASS COUNSEL;**
**(3) AWARDING ENHANCEMENT TO THE REPRESENTATIVE PLAINTIFF; AND**
**(4) AWARDING REIMBURSEMENT OF SETTLEMENT ADMINISTRATION COSTS**

**Date: April 8, 2021**
**Time: 1:30 p.m.**
**Dept.: 8**
**Judge: Lucy H. Koh**

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
555 12TH STREET, SUITE 1725
OAKLAND, CA 94607
TEL: (510) 891-9800

## NOTICE OF MOTION

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD**, **NOTICE IS HEREBY GIVEN** that, on April 8, 2021 at 1:30 p.m., or as soon thereafter as the matter may be heard in Department 8 of the above-entitled Court, located at 280 South 1st Street, San Jose, CA 95113, Representative Plaintiff Morgan McShan will and hereby does apply to this Court for an Order:

1. Granting final approval of class action settlement agreement;
2. Awarding attorneys' fees and costs to Class Counsel;
3. Awarding Enhancement/Service payment to the Representative Plaintiff; and
4. Awarding reimbursement of settlement administration fees and costs.

This Motion is based upon this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the Declaration of Scott Edward Cole, Esq. and exhibits thereto, the Declarations of class representative Morgan McShan, the Declaration of Jarrod Salinas, the complete files and records of this action, and any oral argument and documentary evidence as may be presented to the Court at the hearing of this Motion.

Dated: March 11, 2021

**SCOTT COLE & ASSOCIATES, APC**

By: ______________________________
Laura Van Note, Esq.
Attorneys for Representative Plaintiff(s), *et al.*

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
555 12TH STREET, SUITE 1725
OAKLAND, CA 94607
TEL: (510) 891-9800

# TABLE OF CONTENTS

**I. INTRODUCTION AND PROCEDURAL HISTORY ....... 1**

**II. SUMMARY OF SETTLEMENT AND NOTICE PROCESS ....... 2**

**III. THE SETTLEMENT MERITS FINAL APPROVAL ....... 5**

**A. THE SETTLEMENT IS PRESUMED FAIR ....... 5**

**B. AS THIS COURT PREVIOUSLY FOUND, THE RELEVANT CRITERIA SUPPORT FINAL APPROVAL ....... 6**

**1. The Value of the Settlement and the Risks Inherent in Continued Litigation Favor Final Approval ....... 7**

**a. Missed Meal Breaks ....... 3**

**b. Missed Rest Breaks ....... 3**

**c. Waiting Time Penalties ....... 3**

**d. Wage Statement Violations ....... 3**

**e. PAGA Penalties ....... 3**

**f. Summary ....... 3**

**2. The Complexity, Expense and Likely Duration of Continued Litigation Support Approval ....... 13**

**3. The Discovery and Factual Investigation Support Approval ....... 14**

**4. The Experience and Views of Counsel Favor Final Approval ....... 14**

**5. The Class Members' Reaction Favors Final Approval ....... 15**

**IV. THE COURT-ORDERED NOTICE PROGRAM IS CONSTITUTIONALLY SOUND AND HAS BEEN FULLY IMPLEMENTED ....... 15**

**V. AN AWARD OF ATTORNEYS' FEES AND COSTS IS APPROPRIATE ....... 16**

**A. A COMMON FUND FEE AWARD IS WARRANTED ....... 16**

**B. CLASS COUNSEL'S COSTS ARE REASONABLE ....... 20**

**VI. REPRESENTATIVE PLAINTIFF DESERVES THE PROPOSED ENHANCEMENT AWARD ....... 20**

**VII. REIMBURSEMENT OF ADMINISTRATION FEES IS APPROPRIATE ....... 22**

**VIII. CONCLUSION ....... 22**

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
555 12TH STREET, SUITE 1725
OAKLAND, CA 94607
TEL: (510) 891-9800

**TABLE OF AUTHORITIES**

**Cases**

*Adewumi vs. GHS Interactive Security LLC.*, No. 34-2017-00210768-CU-OE-GDS (Sacramento Super. Ct. 2019) .................................... 26

*Alberto v. GMRI, Inc.*, *Not Rpt'd in* F. Supp. 2d, 2008 WL 4891201 (E.D. Cal. 2008)............................................. 18

*Amaral v. Cintas Corp. No. 2*, 163 Cal.App.4th 1157 (2008) ........................................................................... 12, 14

*Augustus v. ABM Security Services, Inc.*, 2 Cal.5th 257 (2016)…………………………………………………………………… 26

*Barbosa v. Cargill Meat Solutions Corp.* 2013 U.S. Dist. LEXIS 93194 (E.D. Cal. July 1, 2013) ......................................................... 21

*Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984)............................................................................................. 3, 22

*Boeing Co. v. Van Gemert*, 444 U.S. 472, 100 S Ct. 745 (1980).............................................................. 3, 20, 21, 22

*Boyd v. Bank of Am. Corp.*, No. SACV 13-0561-DOC, 2014 WL 6473804 (C.D. Cal. Nov. 18, 2014) ............................ 21

*Boyd v. Bechtel Corp.*, 485 F. Supp. 610 (N.D. Cal. 1979) ………………………………………………… 10, 18, 19

*Brinker Restaurant Corp. v. Superior Court*, 53 Cal.4th 1004 (2012) ............................................................................................... 9, 10

*Cartt v. Superior Court*, 50 Cal. App. 3d 960 (1975) ........................................................................................... 19

*Central Railroad & Banking Co. of Georgia v. Pettus*, 113 U.S. 116, 5 S.Ct. 387 (1885)........................................................................................ 3, 21

*Chau v. Starbucks Corp.*, 174 Cal. App. 4th 688 (2009) ......................................................................................... 17

*City of Riverside v. Rivera*, 477 U.S. 561 (1986)............................................................................................................ 20

*Consumer Cause, Inc. v. Mrs. Gooch's Natural Food Markets, Inc.*, 127 Cal.App.4th 387, 397 (2005) ............................................................................... 22

*Davis v. The Money Store, Inc.*, Case No. 99AS01716 (Sacramento Super. Ct. 2000) ........................................................... 2

*Dennis v. Kellogg Co.*,
697 F.3d 858, 865 (9th Cir. 2012) .......... 5

*Dunleavy v. Nadler*,
213 F.3d 454 (9th Cir. 2000) ..........6

*Eisen v. Carlisle & Jacquelin*,
417 U.S. 156 (U.S. 1974).......... 19

*Ellis Naval Air Rework Facility*,
87 F.R.D. 15 (N.D. Cal. 1980).......... 19

*Ferguson v. Lieff, Cabraser, Heimann & Bernstein*,
30 Cal.4th 1037 (2003) .......... 16

*Finder v. Leprino Foods Co.*,
No. 1:13-CV-2059 AWI-BAM, 2015 U.S. Dist. LEXIS 30652, at *1 (E.D. Cal. March 12, 2015)..... 13

*Fleming v. Covidien Inc.*,
2011 WL 7563047, at *3-4 (C.D. Cal. Aug. 12, 2011) .......... 14

*Franklin v. Kayrpo Corp.*,
884 F.2d 1222 (9th Cir. 1989) .......... 16

*Garner v. State Farm Auto Ins. Co.*,
No. CV 08 1365 CW (EMC), 2010 U.S. Dist. Lexis 49477 (N.D. Cal. Ap. 22, 2010).......... 7

*Girsh v. Jepson*,
521 F.2d 153 (3d Cir. 1975).......... 10

*Glendora Community Redevelopment Agency*,
155 Cal.App.3d at 475 .......... 24

*Graciano v. Robinson Ford Sales, Inc.*,
144 Cal.App.4th 140 (2006) .......... 23

*Green v. Obledo*,
29 Cal.3d 126 (1981) .......... 2

*Guippone v. BH S&B Holdings LLC*,
2011 U.S. Dist. LEXIS 126026, at **4, 20 (S.D.N.Y. Oct. 28, 2011) .......... 26

*Haitz v. Meyer, et al.*,
No. 572968-3 (Alameda Super. Ct., 1990) .......... 2

*Hanlon v. Chrysler Corp.*,
150 F.3d 1011, 1029 (9th Cir. 1998) .......... 7, 21

*Ibrahimi v. Walgreen*,
(Contra Costa Super. Ct. 2019) Case No. MSC16-02120).......... 2

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
555 12TH STREET, SUITE 1725
OAKLAND, CA 94607
TEL: (510) 891-9800

*In re Autozone, Inc. Wage and Hour Litig.*, Case No. 3:10-md-021590CRB, 2016 WL 4208200 at **6-7 (N.D. Cal. Aug. 10, 2016)....... 12

*In re California Indirect Purchases*, 1998 WL 1031494, 11 (Alameda Super. Ct. 1998) ........ 26

*In re Cipro Cases I and II*, 121 Cal. App. 4th 402 (2004) ........ 17

*In re GNC Shareholder Litig.: All Actions*, 668 F.Supp. (W.D. Pa. 1987)........ 3, 25

*In re Omnivision Technologies, Inc.*, 559 F. Supp.2d 1036, 1043 (N.D. Cal. 2007) ........18

*In re Quantum Health Resources, Inc. Sec. Litig.*, 962 F. Supp. 1254 (C.D. Cal. 1997) ........ 23

*In re United Energy Corp. Sec. Litig.*, 1989 WL 73211 (C.D. Cal. 1989)........ 3, 25

*In re Washington Public Power Supply System Securities Litigation*, 720 F. Supp. 1379 (D. Ariz. 1989) ........ 18

*Ketchum v. Moses*, 24 Cal.4th 1122 (2001) ........ 23

*Kirby v. Imoos Fire Protection, Inc.*, 53 Cal. 4th 1244 (2012) ........ 12

*Kullar v. Foot Locker Retail, Inc.*, 168 Cal.App.4th 116 (2008) ........ 7

*La Mesa-Spring Valley School Dist. of San Diego County v. Nobuo Otsuka*, 57 Cal.2d 309 (1962) ........ 23

*Lealao v. Beneficial California*, 82 Cal.App.4th 19 (2000) ........ 21

*Ling v. P.F. Chang's China Bistro, Inc.*, 245 Cal.App.4th 1242, 1261 (2016) ........ 12

*Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998). ........ 7

*Magadia v. Wal-Mart Associates, Inc.*, 384 F.Supp. 1058 (N.D. Cal. 2019). ........ 14

*Makabi v. Gedalia*, Case No. BC468146 (L.A. Super. Ct. May 8, 2013) ........ 14

*Maldonado v. Epsiolon Plastics, Inc.*, 22 Cal.App.5th 1308, 1337 (2018) ........ 13

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
555 12TH STREET, SUITE 1725
OAKLAND, CA 94607
TEL: (510) 891-9800

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
555 12TH STREET, SUITE 1725
OAKLAND, CA 94607
TEL: (510) 891-9800

*Martin v. AmeriPride Servcs.*,
No. 08cv440–MMA (JMA), 2011 WL 2313604 (S.D. Cal. June 9, 2011) ...................... 19

*Murillo v. Pac. Gas & Elec. Co.*,
266 F.R.D. 468 (E.D. Cal. 2010) ...........................................................6

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,
221 F.R.D. 523 (C.D. Cal. 2004) ...........................................................18

*Phillips Petroleum Co. v. Shutts*,
472 U.S. 797 (1985)........................................................................ 19

*Rangel v. PLS Check Cashers of California, Inc.*,
899 F.3d 1106 (9th Cir. 2018) ........................................................... 2

*Rodriguez v. West Publ'g Corp.*,
563 F.3d 948 (9th Cir. 2009) ..............................................................6

*Savaglio v. Wal-Mart Stores, Inc.*,
Case No. C-835687 (Alameda County Super. Ct.)........................................ 17

*Serrano v. Bay Bread LLC*,
2016 Cal. Super. LEXIS 8043 at *22 (June 29, 2016) ................................... 12

*Serrano v. Priest*,
20 Cal.3d 25 (1977) ........................................................ 3, 21, 22

*Sprague v. Ticonic Nat'l Bank*,
307 U.S. 161, 59 S.Ct. 777 (1939)................................................ 3, 21

*Staton v. Boeing Co.*,
327 F.3d 938 (9th Cir. 2003) ..............................................................6

*Thurman v. Bayshore Transit Mgmt.*,
203 Cal.App.4th 1112, 1135-36 (2012)................................................... 14

*Van Vranken v. Atlantic Richfield Co.*,
901 F. Supp. 294 (N.D. Cal. 1995)....................................................... 26

*Vasquez v. Coast Valley Roofing, Inc.*,
266 F.R.D. 482 (E.D. Cal. 2010)......................................................... 21

*Vizcaino v. Microsoft Corp.*,
290 F.3d 1043, 1050 & n.5 (9th Cir. 2002) ................................................ 3

*White v. Starbucks Corp.*,
497 F.Supp.2d 1080 (N.D. Cal. 2007) .................................................... 10

*Williams v. MGM-Pathe Communs. Co.*,
129 F.3d 1026, 1027 (9th Cir. 1997) ...................................................... 20

*Willner v. Manpower Inc.*,
(N.D. Cal. 2014) 35 F.Supp.3d 1116 ........................................................................ 12

*Young v. Katz*,
447 F.2d 431 (5th Cir. 1971) ..................................................................................... 16

**CA Statutes**

Cal. Labor Code § 2699(e)(2) ......................................................................................... 14

Cal. Labor Code § 2699(i) ................................................................................................. 4

**Treatises**

*Manual for Complex Litigation (4th ed. 2008)* ................................................................ 6

Newberg on Class Actions (5th ed. 2014)
§§ 13:39, et seq ..............................................................................6

*Private Attorneys General Act* ......................................................................................... 1,

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
555 12TH STREET, SUITE 1725
OAKLAND, CA 94607
TEL: (510) 891-9800

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
555 12TH STREET, SUITE 1725
OAKLAND, CA 94607
TEL: (510) 891-9800

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION AND PROCEDURAL HISTORY

Plaintiff Morgan McShan filed this case individually and as a class action on behalf of all others similarly situated on April 10, 2019, alleging that Defendant Hotel Valencia Corporation's policies and practices prevented him and class members from taking statutorily-mandated meal and rest breaks. The class was defined as "[a]ll persons employed as non-exempt employees by Hotel Valencia Corporation in California at any time on or after April 10, 2015." Defendant removed the case to Federal Court and Plaintiff subsequently filed a First Amended Complaint on November 6, 2019 for violations of the same statutes, as aggrieved employees under the Private Attorneys General Act, Labor Code § 2698 et. seq. (PAGA). The basis of the Complaint was that Defendant operated its hotel using consistent policies that resulted in various wage and hour violations against the non-exempt hotel employees, including unpaid wages for missed and/or interrupted meal and rest breaks. Defendant denies all claims alleged in the operative complaint and disputes any liability for the damages sought. After discovery efforts and a full day mediation, and subsequent weeks of further negotiations, the parties agreed to a $365,000 ***non-reversionary*** settlement. Given the scope of Defendant's operations, the nature of the alleged violations, and the size of the Plaintiff Class, this settlement is well within the range of reasonableness and should be approved.[1]

## II. SUMMARY OF SETTLEMENT AND NOTICE PROCESS

Under the preliminarily-approved Settlement Agreement, Defendants will pay $365,000 ("Gross Settlement Fund") for a limited release of class members' claims: only those claims actually alleged in the action or that could have been alleged based on the facts stated in the

---

[1] A copy of the fully executed Settlement Agreement and Release of Claims ("Settlement" or "Settlement Agreement"), is attached to the Declaration of Scott Edward Cole, Esq. in Support of Plaintiff's Motion for Preliminary Approval of Class Action Settlement ("Cole Decl.") as Exhibit "A." Unless otherwise noted, all exhibits cited herein are attached to the Cole Decl.

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
555 12TH STREET, SUITE 1725
OAKLAND, CA 94607
TEL: (510) 891-9800

operative Complaint,[2] consistent with principles of *res judicata*. (*See*, *Rangel v. PLS Check Cashers of California, Inc.*, 899 F.3d 1106 (9th Cir. 2018).[3] Further key terms include:

***Class Definition.*** The Class consists of "any non-exempt hotel worker who worked in California during the prior beginning April 10, 2015 through December 9, 2019 at the Hotel Valencia Corporation in San Jose, California, excluding any worker who had previously executed a release that completely waives any meal and rest break claims against the Defendant for whom the individual worked and any such individuals who opt out of this Settlement."

***Net Settlement Fund.*** The $365,000 gross fund is non-reversionary, such that no amount will revert back to the Defendant, and the employer's share of payroll taxes shall be funded independently by the company, so it does not deplete the settlement proceeds. The "Net Settlement Amount" will be distributed to class members who do not opt out and will be calculated by deducting attorneys' fees and costs, class representative service awards, claims administrator costs), and a payment to the LWDA for the release of PAGA claims. These distributions are further summarized as follows:

***Attorneys' Fees and Costs.*** The settlement provides for an attorneys' fee award of 25% of the settlement amount, a typical percentage[4] in the resolution of common fund wage and hour

---

2 In exchange for their option of receiving service awards, the Representative Plaintiffs also agreed to a § 1542 release of all potential claims (whether pled or not). Although Defendant can argue, as defendants often do, that seeking wages under California law **and** the federal FLSA is double-dipping for the same wages, no one, including the named plaintiffs, is releasing any FLSA claims through this settlement.

3 This Motion occasionally cites federal case law and commentaries thereon which construe authority for conditional class certification and settlement approval in California courts. The California Supreme Court has authorized and urged California's trial courts to use federal resources for guidance in considering class issues. *Vasquez v. Superior Court*, 4 Cal.3d 800, 821 (1971); *Green v. Obledo*, 29 Cal.3d 126, 145-46 (1981).

4 *See, e.g.*, *Davis v. The Money Store, Inc.*, Case No. 99AS01716 (Sacramento Super. Ct. 2000) (33 1/3 % fee award); *Haitz v. Meyer, et al*., No. 572968-3 (Alameda Super. Ct., 1990) (45% fee award); *Ibrahimi v. Walgreen*, (Contra Costa Super. Ct. 2019) Case No. MSC16-02120) (35% fee award in wage and hour class action); *Rippee v. Boston Mkt. Corp*., 2006 U.S. Dist. LEXIS 101136 (S.D. Cal. Oct. 10, 2006) (40% fee award); Exhibit "D" (Compendium of Settlement Item Awards).

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
555 12TH STREET, SUITE 1725
OAKLAND, CA 94607
TEL: (510) 891-9800

cases.[5] SCA has devoted numerous hours to and faced significant risk[6] in the prosecution of these matters and, more importantly, made an extraordinary fund available to a large number of otherwise-underrepresented, low paid workers. SCA also incurred ordinary litigation costs over the past two years and seeks costs of $6,673.02. Noteably, this amount does not account for additional future expenses in overseeing the settlement process, making appearances, filing court documents, ensuring claims administration compliance with this Court's orders, responding to class members, CPAs, etc., Since costs in the amount of $6,673.02 are reasonable and served to benefit the class, they warrant reimbursement.[7]

***Enhancement Award.*** The Settlement also provides for Enhancement Award (aka "service payment") to Representative Plaintiff Morgan McShan of up to $2,500 a for his time, risk and effort in bringing the lawsuit, representing the large class, and in consideration for the claims released.[8] The proposed service payments are also reasonable given the minimal impact these amounts will have on any settling class member's level of recovery.

---

[5] California state courts, the Ninth Circuit and the United States Supreme Court are in agreement that awarding attorneys' fees as a percentage of the common fund is the proper method. *Serrano v. Priest*, 20 Cal.3d 25 (1977); *Staten v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003); *Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000); *Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984) (in common fund cases, fees are not assessed against the unsuccessful litigant (a.k.a. "**fee shifting**"), but rather, taken from the fund or damage recovery (a.k.a. "**fee spreading**")). In fact, the United States Supreme Court has always computed common fund fee awards on a percentage of the fund basis. *Boeing Co. v. Van Gemert*, 444 U.S. 472, 100 S Ct. 745 (1980); *Sprague v. Ticonic Nat'l Bank,* 307 U.S. 161, 59 S.Ct. 777 (1939); *Central Railroad & Banking Co. of Georgia v. Pettus*, 113 U.S. 116, 5 S.Ct. 387 (1885). *Contrast*, *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998) (the lodestar approach, enhanced by a multiplier, can be used as an alternative to the common fund theory when "there is no way to gauge the net value of the settlement or any percentage thereof."; *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050 & n.5 (9th Cir. 2002) ("[I]t is widely recognized that the lodestar method creates incentives for counsel to expend more hours than may be necessary on litigating a case so as to recover a reasonable fee, since the lodestar method does not reward early settlement.").

[6] Notably, post-judgment, class counsel will be required, *inter alia*, to stay in contact with the claims administrator to ensure payment of the settlement proceeds to all class members, to communicate with the class members themselves, their CPAs, even other attorneys regarding the tax treatment of settlement proceeds (and to answer a host of other questions), and report compliance with the terms of the Court's final approval order. Attorney fee awards in common funds cases are, thus, intended to compensate class counsel for work performed both before *and after* the date of judgment.

[7] *In re United Energy Corp. Sec. Litig.*, *Not Rpt'd in* F.Supp., 1989 WL 73211, * 6 (C.D. Cal. 1989) ("[a]n attorney who creates or preserves a common fund by judgment or settlement for the benefit of a class is entitled to receive reimbursement of reasonable fees and expenses involved"); 1 Alba Conte, *Attorney Fee Awards* § 2:08 at 50-51 ("The prevailing view is that expenses are awarded in addition to the fee percentage."); *In re Warner Comm. Sec. Litig.*, 618 F.Supp. 735 (S.D.N.Y.1985); *In re GNC Shareholder Litig.: All Actions*, 668 F.Supp. 450, 452 (W.D. Pa. 1987).

[8] *See*, Declaration of the Representative Plaintiff, submitted herewith.

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
555 12TH STREET, SUITE 1725
OAKLAND, CA 94607
TEL: (510) 891-9800

***PAGA Allocation.*** The Settlement provides for a payment of $4,000 for a release of PAGA claims, 75% of which will be remitted to the LWDA and 25% of which will remain in the Net Settlement Fund.[9] The $4,000 allocation for PAGA penalties is reasonable under the circumstances and consistent with PAGA allocations in similar actions. Exhibit "D."

***Settlement Administration Costs.*** The settlement administration costs are not to exceed $7,499—a reasonable amount given the size of the class and the work required to send the Notice, process settlement checks, establish and update a settlement website, and communicate extensively with class members and Class Counsel.

***Employer's Share of Payroll Taxes.*** Defendant's share of payroll taxes, including, but not limited to FICA and FUTA, shall be paid separately from the Gross Settlement Fund. While many similar settlements allow the employer taxes to be paid from the Gross Settlement Fund, SCA specifically negotiated against that option.

***Tax Treatment of Individual Settlement Shares.*** Class members' settlement shares will be allocated as 20% wages and 80% interest and statutory penalties for tax purposes. This allocation is reasonable given that the majority of the class claims were, arguably, for penalties (e.g., Labor Code §§ 203, 226, 558, 2699), not underlying wages. Obviously, this particular tax treatment provides substantially additional monies to these already low-paid workers.

***Results of the Notice Process.*** In accordance with the Court's grant of preliminary approval, the Settlement Administrator sent the Notices by first class mail to all class members at their last known addresses, updated using the National Change of Address ("NCOA") Database. As detailed below, when Notices were returned by the post office, the claims administrator researched further, performed "skip traces" and then, when possible, re-mailed those Notices to better mailing addresses. Challenges to the Notice process and to the Settlement itself were non-existent.

***Distribution to Class.*** The entire Net Settlement Fund will be disbursed to the Settlement Class. Individual settlement shares will be calculated based on the number of compensable pay

9 *Cal. Labor Code* § 2699(i).

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
555 12TH STREET, SUITE 1725
OAKLAND, CA 94607
TEL: (510) 891-9800

periods worked by each class member during the class period,[10] divided by the total number of compensable pay periods worked by all settling class members during the class period. The Net Settlement Fund shall be distributed based upon the schedule discussed below. Even before the onset of the current viral pandemic, it was specifically negotiated that the Net Settlement Fund would be paid out at the earliest possible time. Indeed, in light of more recent events, these funds are needed by these low wage earners now more than ever.

***Effective Date.*** The Effective Date of the Settlement means: (a) the date upon which the time for appeal of the Court's Order granting final approval of the Settlement Agreement expires; unless (b) an appeal is timely filed, then "Effective Date" means the date of final resolution of any appeal from the Order granting final approval of the Settlement Agreement.

***Funding.*** No later than forty-five days after the Effective Date, Defendant shall provide payment to the Settlement Administrator to fund the Settlement, and Settlement Administrator shall mail the payments to the LWDA, the Representative Plaintiff (for his enhancement award payment), Class Counsel (for its awarded attorneys' fees and expenses), the Settlement Administrator (for its fees and expenses) and Settlement Class Members. Settlement checks will remain valid for 180 days from the date of issuance.

***Cy Pres.*** If a class member does not cash his or her settlement check within 180 days, the uncashed funds would be transmitted in accordance with California Code of Civil Procedure Section 384(b) to Legal Aid at Work in San Francisco, CA.[11]

## III. THE SETTLEMENT MERITS FINAL APPROVAL

When evaluating a class action settlement under Federal Rule 23 for final approval, a court's inquiry focuses upon whether the settlement is "fair, adequate and reasonable." Rule

---

[10] The number of applicable pay periods worked by each class member was included in his/her respective Notice, such that he/she could challenge them if the number was believed to be inaccurate.

[11] CCP § 384(b) requires that cy pres awards go to organizations that "will benefit the class or similarly situated persons or that promote the law consistent with the objectives and purposes of the underlying cause of action[.]" Between the claims here and Legal Aid at Work there is a "driving nexus," given that this organization represents "low-wage workers who are victims of wage violations." *Dennis v. Kellogg Co.*, 697 F.3d 858, 865 (9th Cir. 2012); https://legalaidatwork.org/cy-pres/.

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
555 12TH STREET, SUITE 1725
OAKLAND, CA 94607
TEL: (510) 891-9800

23(e)(1)(C); *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003). A settlement is "fair, adequate and reasonable" and therefore merits final approval when "the interests of the class are better served by the settlement than by further litigation." *Manual for Complex Litigation* (4th ed. 2008) § 21.61, 462 ("*Manual*"). These conditions are met here.

Rule 23(e) Settlement approval includes three steps: (1) preliminary approval of the proposed Settlement, (2) dissemination of a notice of the Settlement to the class and (3) a final fairness hearing at which counsel may introduce evidence and argument supporting the fairness, adequacy, and reasonableness of the Settlement, and class members may be heard. *Murillo v. Pac. Gas & Elec. Co.*, 266 F.R.D. 468, 473 (E.D. Cal. 2010). This procedure safeguards class members' due process rights and enables the Court to guard class interests. *See* William Rubenstein, Alba Conte & Herbert Newberg, *Newberg on Class Actions* (5th ed. 2014) ("Newberg"), §§ 13:39, et seq.

The first two steps are complete. The first step was completed on DATE when the Court entered an Order that preliminarily approved the Settlement. The second step–dissemination of the Class Notice–was completed on DATE. The third step is the final approval hearing, when the Court determines whether the Settlement is fair, adequate and reasonable.

**A. <u>THE SETTLEMENT IS PRESUMED FAIR</u>**

The decision whether a Settlement is fair, reasonable, and adequate is committed to the Court's sound discretion. *Dunleavy v. Nadler*, 213 F.3d 454, 458 (9th Cir. 2000) (citing *Linney v. Cellular Alaska Partnership*, 151 F.3d 1234, 1238 (9th Cir. 1998)); *Officers for Justice v. Civil Serv. Comm'n. of the City and County of San Francisco* 688 F.2d 615, 625 (9th Cir. 1982), *cert. denied*, 459 U.S. 1217 (1983); *see also* Manual for Complex Litigation, § 21.61, at p. 308 (4th ed. 2004).

Although the Court has discretion to determine whether a proposed class Settlement is fair, the Ninth Circuit has "long deferred to the private consensual decision of the parties." *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009) (citing *Hanlon v. Chrysler Corp.*, 150

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
555 12TH STREET, SUITE 1725
OAKLAND, CA 94607
TEL: (510) 891-9800

F.3d 1011, 1027 (9th Cir. 1998)). "[T]he court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the Settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Officers for Justice v. Civil Serv.Comm'n*, *supra*, 688 F.2d at 625. What's more, "in evaluating whether the Settlement is fair and adequate, the Court's function is not to second guess the Settlement's terms." *Garner v. State Farm Auto Ins. Co.*, No. CV 08 1365 CW (EMC), 2010 U.S. Dist. Lexis 49477, *21 (N.D. Cal. Ap. 22, 2010). A "[s]ettlement is the offspring of compromise; the question we address is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion." *Hanlon v. Chrysler Corp*., *supra*, 150 F.3d at 1027.

The Settlement was reached through arm's length negotiations. The Settlement was only reached after significant litigation, a mediation session facilitated by a respected mediator with extensive experience in employment law, and then four additional months of negotiation.[12]

Moreover, Class Counsel conducted a thorough investigation and, well-apprised of the facts and risks, was able to garner a favorable result for the Settlement Class. Discovery efforts included the production and review of relevant documents through formal discovery as well as, informally,[13] key data points prior to mediation, a class member outreach campaign resulting in interviews with numerous putative class members more than sufficient investigation to warrant approval of this settlement. Indeed, the Settlement came at a stage in litigation where Plaintiff and Defendant were informed of the facts relevant to the case as well as the strengths and weaknesses of their respective positions and the risks of continued litigation.

---

[12] Indeed, in *Kullar*, the California Court of Appeal agreed that trial courts should give considerable weight to the competency of counsel and the involvement of a neutral mediator. *Kullar v. Foot Locker Retail, Inc*., 168 Cal. App. 4th 116, 129 (Cal. App. 1st Dist. 2008).

[13] In many class actions, informally-exchanged discovery protects a defendant's proprietary and/or financial information, oftentimes allowing a richer and faster exchange of data calculated to determine the settlement value—putting the parties in a far better settlement position, so long as plaintiff's counsel is skilled in knowing what to request. Indeed, although formal discovery was indeed conducted, such is "not a necessary ticket to the bargaining table." *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998).

The SCA firm has vast experience in similar litigation—having handled several hundred wage and hour class actions, dozens of which were brought against hotels or hospitality related companies.[14] Finally, as discussed, *infra* (Section IV), of the hundreds of class members, not a single class member objected, and only one of of them opted out. Accordingly, the presumption that the Settlement is fair applies.

### B. AS THIS COURT PREVIOUSLY FOUND, THE RELEVANT CRITERIA SUPPORT FINAL APPROVAL

At the preliminary approval stage, the Court was provided with information satisfying all but the final *Rodriguez* factor. Based on that information, the Court preliminarily found that the "Settlement is preliminarily approved as within the range of reasonableness pursuant to Federal Rule of Civil Procedure 23(e)." The fourth factor, the number of objectors, weighs in favor of this Court's approval since no Class Members pursued objections (and only one Class Member opted out). These realities entitle the Settlement to a *presumption* of fairness.

#### 1. The Value of the Settlement and the Risks Inherent in Continued Litigation Favor Final Approval

While Plaintiff believes in the merits of his case, he also recognizes the inherent risks and uncertainty of litigation, including that Class Members could receive nothing, and understands the benefit of providing a significant settlement sum now. *Inter alia*, the specific risks include: (i) denial of class certification and/or the threat of subsequent decertification, (ii) a factual record less favorable than Class Counsel first thought, (iii) the risk of the Court granting summary judgment/adjudication, (iv) the need for a unanimous jury, (v) the possibility of an unfavorable, or less favorable, result at trial, (vi) the possibility post-trial motions may result in an unfavorable, or less favorable, result than that obtained at trial, (vii) the possibility of an unfavorable, or less favorable result on appeal, and (viii) the near certainty that each step of the process would be protracted, costly, and deprive Class Members of the benefits and time-value of a certain recovery.

Additional risks include: (i) the possibility this Court might find that California Labor Code

---

[14] Exhibit "B," SCA's Professional Resume.

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
555 12TH STREET, SUITE 1725
OAKLAND, CA 94607
TEL: (510) 891-9800

Section 203 requires a "willful" failure to pay wages and the difficulties Plaintiffs faced in establishing a common policy of paying wages after they are due, (ii) the relative lack of written evidence for the Class Members' missed meal and/or rest periods, other than their declarations, (iii) that, even if the Court certified the Class, the possibility that it would agree with Defendant's likely argument that employers need only make breaks available and that Defendant had no obligation to ensure that breaks were actually taken (s*ee Brinker Restaurant Corp. v. Superior Court*, 53 Cal.4th 1004 (2012)), (iv) Defendant's likely argument that, even if found liable for unpaid wages, meal period violations and/or failure to pay overtime compensation, the Class Members lacked sufficient evidence to legally establish their damages, (vi) Defendant's likely argument that Plaintiff's estimate of the maximum damages available to the Class was vastly overstated and did not comport with the *actual* damages suffered by Class Members, (vi) Defendant's likely argument that Plaintiff could not show that there was an "injury" entitling the Class to recovery under California Labor Code section 226, and (vii) the possibility that the Court could have reduced or denied an award of PAGA penalties on the basis that they are arguably discretionary (*see* Cal. Lab. Code § 2699(e)(1)) and (viii) that, due to all this, there is no representative Plaintiff nor representative sample size that could adequately speak for the larger worker population.

Before adjusting for these contingencies, Class counsel estimated the maximum potential recovery, including unpaid wages, interest and penalties, for the certified claims to be $2.4M. The $365,000.00 Settlement Amount, by all accounts, is a great settlement and represents nearly 15% of the highest potential amount Class counsel calculated.

When evaluating the Settlement for fairness, the Court should weigh the immediacy and certainty of substantial settlement proceeds against the risks inherent in continued litigation. In making a fairness determination, "[t]he most important factor is the strength of the case for plaintiff on the merits, balanced against the amount offered in settlement." *Kullar*, 168 Cal.App.4th 116, 128 (2008). This analysis often includes a comparison of the amount of the proposed settlement with the value of the damages potentially recoverable if successful in further litigation,

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
555 12TH STREET, SUITE 1725
OAKLAND, CA 94607
TEL: (510) 891-9800

appropriately discounted for the risk of not prevailing. *Dunk*, 48 Cal.App.4th at 1801-1802; *Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975); *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 617-619 (N.D. Cal. 1979).

**a. <u>Missed Meal Breaks</u>**

The allegation that Defendant deprived class members of meal and rest periods was the driving force of this litigation. However, as the company's policies exhibited, Defendant had taken a variety of steps to adopt and enforce compliant meal and rest break policies by the time this case was filed. Indeed, SCA all but conceded this fact, and yet, maintained that the violations stemmed more from scheduling practices (versus a *per se* noncompliant policy) whereby many workers were required to remain "on-duty" during their breaks, an inadequate labor budget to consistently permit employee coverage during breaks and/or that workers were uninformed as to what constituted a valid break to begin with.

Despite Representative Plaintiff's allegations, however, the arguable lack of a *per se* violative policy presented significant challenges to class certification, as did Defendant's argument that this class of workers served in various positions, under (at least, potentially) varying degrees and styles of management oversight.[15] And, even if the Court certified the class (or a subclass thereof), Defendant would undoubtedly argue it need only make breaks *available* and that it had no obligation to *ensure* that breaks were actually taken. *Brinker Restaurant Corp. v. Superior Court*, 53 Cal.4th 1004 (2012); *White v. Starbucks Corp.*, 497 F.Supp.2d 1080 (N.D. Cal. 2007).

Nevertheless, based on SCA's analysis of the available payroll records, it was determined that the number of pay period in which meal periods could be missed was as high as 7,290. Using this information and data provided by Defendant, an average (weighted) hourly wage of $15.08, and assuming a violation every worker worked a full time shift five days per week, every week,

---

[15] While Representative Plaintiff's position that liability and premium wages due for missed meal and rest periods could be determined using representative sampling, Defendant would certainly attack any proposed methodology and argue the class issues to be unmanageable. What's more, turning to damages, few, if any, records were available which demonstrated meal or rest period violations, making damages calculations difficult. This quantification, however, would be Representative Plaintiff's burden.



SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
555 12TH STREET, SUITE 1725
OAKLAND, CA 94607
TEL: (510) 891-9800

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
555 12TH STREET, SUITE 1725
OAKLAND, CA 94607
TEL: (510) 891-9800

the liability exposure possible for this claim could approach $440,000 over the period since April 2015. This recovery number is, of course, based on a variety of assumptions, none of which Defendant has agreed to, on schedules for this largely part time workforce that would be unrealistic (i.e., that every worker worked every day for eight full hours), and on the assumption that all elements of this claim could be proven (as well as its frequency) at trial.

Indeed, perhaps the most questionable assumption is that roughly 4-5 potential meal periods per pay cycle (i.e., a violation every single working day) were actually "missed," not to mention represent a "violation" of Labor Code §512. Given that class members would rarely have made or kept independent records of whether they took complaint breaks, it is likely that many, if not the vast majority, of any breaks missed would be, in fact, punch-in/punch-out errors or class member neglect in punching in/out at all. That, and given the generally unsophisticated approach by entry-level workers to diligent timekeeping, it is very likely that many workers simply took their breaks without punching out properly or notifying management when they left for a break. And, in other situations, it is likely that many class members were afforded the chance for a break but simply elected not to take one for any one of myriad reasons. These challenges—and the paucity of records to demonstrate the violations—reveals that a substantial discount off SCA's original damages estimate was appropriate.

**b. <u>Missed Rest Breaks</u>**

As discussed above, the risk of losing class certification, proof of compliant policies and aggressive enforcement measures means SCA was also compelled to deeply discount its rest break damages analysis. Using the same data points enumerated above and based upon its investigation, the liability exposure possible for missed rest periods could also approach $1 million. Again, however, none of the assumptions supporting this estimate were conceded by Defendant and, for all the reasons set forth above (e.g., whether these were actually "missed" breaks, a lack of independent record-keeping), it is suspect if even a substantial percentage of these occurrences could constitute violations of § 226.7. Add to these uncertainties the fact that employers may

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
555 12TH STREET, SUITE 1725
OAKLAND, CA 94607
TEL: (510) 891-9800

require workers to stay on-premises during rest periods, and it becomes even more evident why many workers may simply have chosen not to take off-duty rest breaks. Given all this, the resolution achieved represents an excellent result for the class.

c. **Waiting Time Penalties**

The strongest claims in this case were the meal and rest break claims, neither of which *conclusively* generates a "wage" to which a Labor Code § 203 claim could be tethered. The California Court of Appeal stated, *arguably in dicta*, that a meal break violation under Labor Code § 226.7 cannot support a "waiting time penalty" under Labor Code § 203. *Ling v. P.F. Chang's China Bistro, Inc.*, 245 Cal.App.4th 1242, 1261 (2016); *Serrano v. Bay Bread LLC*, 2016 Cal. Super. LEXIS 8043 at *22 (June 29, 2016) (no published California case holds contrary to *Ling*); *Kirby v. Imoos Fire Protection, Inc.*, 53 Cal. 4th 1244 (2012) (failure to pay meal and rest period premiums cannot trigger waiting time penalties); *but see*, *In re Autozone, Inc. Wage and Hour Litig.*, Case No. 3:10-md-021590CRB, 2016 WL 4208200 at **6-7 (N.D. Cal. Aug. 10, 2016) (meal period payments constitute "wages," thus, supporting Labor Code §§ 201-203 claims).

More recently, the California Supreme Court has granted review[16] in *Naranjo v. Spectrum Security Services, Inc.* (No. S258966) 40 Cal.App.5th 444 (2020 Cal.App. LEXIS 167), to tackle the question of whether a rest break violation supports an additional penalty under Labor Code § 203 and/or 226 or if this would constitute "penalties on penalties." Finally, Defendant would contend that Representative Plaintiff could not show the requisite "willful[ness]" under § 203. *Willner v. Manpower Inc.*, 35 F.Supp.3d 1116, 1131 (N.D. Cal. 2014); *Amaral v. Cintas Corp. No. 2*, 163 Cal.App.4th 1157, 1203-04 (2008) (holding the employer did not willfully fail to pay wages under Labor Code § 203 even though the class prevailed on the merits on the underlying claim).

Based on a typical eight-hour workday, on records showing that over 167 class members were "severed" employees, and that their average (weighted) hourly wage was $15.08,

[16] Should the trial court stay the instant litigation, pending the Supreme Court's review of *Naranjo*, payments to class members would be further delayed.

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
555 12TH STREET, SUITE 1725
OAKLAND, CA 94607
TEL: (510) 891-9800

Defendant's liability could reach as high as $450,000 for waiting time penalties. Given the state of the law, and that an unrealistic full eight-hour workday was used to calculate this penalty for <u>all</u> severed workers, the value of this claim was discounted ***significantly***.

**d. <u>Wage Statement Violations</u>**

Although some federal court decisions have held break premiums under Labor Code § 226.7 can support a wage statement penalty under Labor Code § 226(e), there are no published California state court decisions issuing a similar holding. *Maldonado v. Epsiolon Plastics, Inc.*, 22 Cal.App.5th 1308, 1337 (2018) (meal and rest claims cannot support a class-wide claim for inaccurate wage statements); *Finder v. Leprino Foods Co.*, No. 1:13-CV-2059 AWI-BAM, 2015 U.S. Dist. LEXIS 30652, at *1 (E.D. Cal. March 12, 2015). In light of the California authority explaining that a violation of Labor Code § 226.7 cannot support a § 203 waiting time penalty, the same logic may apply to § 226 wage statement penalties, making those entirely unrecoverable in this litigation. Had this matter not settled, Defendants would have certainly argued this, as well as contended Representative Plaintiff cannot establish an "injury" resulting from Defendants' "knowing and intentional failure" to furnish wage statements (i.e., that included premium pay for missed breaks). Cal. Lab. Code § 226(e)(1).

Under § 226, class members may recover $50.00 for the initial violation and $100.00 for each subsequent violation. Based on data provided by Defendant and subsequent analysis thereof by SCA, class members stood to potentially recover $200,000 if they fully prevailed on these claims at trial. Given the numerous elements Representative Plaintiff would be required to demonstrate, and anticipating Defendant's "penalties on penalties" argument, SCA's "reality check" and, thus, significant discount to the potential value of this claim, was appropriate. What's more, this analysis assumes the penalties for all class members would never have reached the §226 cap of $4,000—although numerous workers stayed with the company beyond the tipping point where their aggregated per-pay-period penalties would have reached that cap.

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
555 12TH STREET, SUITE 1725
OAKLAND, CA 94607
TEL: (510) 891-9800

**e. PAGA Penalties**

Representative Plaintiff also alleged that Defendant's conduct created liability under PAGA. PAGA claims are extraordinarily difficult to evaluate because there are several obstacles to the actual award of the civil penalty. First, it is arguably unclear whether penalties continue to accrue until the court finds a violation to exist. Second, Labor Code § 2699(e)(1) and (2) give trial courts immense discretion to access or lower the penalty amount.[17] Indeed, several courts have exercised their broad discretion and have dramatically limited PAGA awards.[18] Third, defendants routinely argue that, when other statutory penalties have been imposed, additional penalties under PAGA are unjust (e.g., in cases where damages are already "in play" based on underlying wage violation claims, as we have here).

Thus, while the PAGA calculation herein for approximately 1,980 pay periods could reach $380,000 (i.e., a calculation identical here to the one for § 226 penalties), the likelihood of that sum ever being awarded, or anything even close to it, is extremely slim. Despite this potential recovery, given that PAGA penalties would likely be deemed duplicative of other penalties awardable here, given the extreme "haircuts" many courts are giving to PAGA penalties, and given the presence here of class action allegations (the absence of which often being the reason so-called "Plan B" PAGA penalties are sought to begin with), PAGA penalties were significantly discounted.

---

[17] Cal. Labor Code § 2699(e)(2) (courts have discretion to deny or significantly reduce PAGA penalties, particularly when the prescribed award would be "unjust, arbitrary and oppressive, or confiscatory.")

[18] See e.g., *Fleming v. Covidien Inc.*, 2011 WL 7563047, at *3-4 (C.D. Cal. Aug. 12, 2011) (invoking § (e)(2) and reducing PAGA penalty award from $2.8 million to $500,000); *Makabi v. Gedalia*, No. BC468146, (L.A. Super. Ct. May 8, 2013) (trial court invoked § (e)(2) and declined to apply any PAGA penalties, despite finding that defendants violated PAGA); *Amaral v. Cintas Corp. No. 2*, 163 Cal.App.4th 1157 (2008) (approving reduction of penalty amount to one-third of the damages award even though there was "no evidence that Cintas [did] not entertain a good faith belief that the LWO did not apply to workers in Plaintiffs' position"); *Thurman v. Bayshore Transit Mgmt.*, 203 Cal.App.4th 1112, 1135-36 (2012) (reducing penalty amount by 30% where "defendants took their obligations under Wage Order No. 9 seriously and attempted to comply with the law); *Magadia v. Wal-Mart Associates, Inc.*, 384 F.Supp. 1058 (N.D. Cal. 2019).

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
555 12TH STREET, SUITE 1725
OAKLAND, CA 94607
TEL: (510) 891-9800

**f. <u>Summary</u>**

In sum, assuming (liability and class certification) success on each of the claims, at the level hoped for by Representative Plaintiff, the claims could be as high as:

| HIGHEST "STARTING PLACE" VALUATIONS | | | | | |
|---|---|---|---|---|---|
| Meal Breaks | Rest Breaks | Waiting Time | Wage Statements | PAGA | TOTAL |
| ~440K | ~$1M | ~$450K | ~$200K | ~$380K | ~$2.4M |

However, based on SCA's conversations with the named plaintiff, knowledge of workflows and typical conditions within the hotel industry (with which SCA has vast experience), and analysis of Defendant's meal and rest break policies, a number of deductions would be appropriate from those totals, due to:

Meal/Rest Periods: Many workers worked below the threshold number of hours for meal or rest period entitlements, worked less than five days per week, and only missed breaks (when they did) out of choice or mis-punches. More likely, one to two violations per pay period is more realistic.

Waiting Time Penalties: If not all workers had meal/rest period violations to begin with, worked less than 8 hours per day, the starting place for this penalty analysis needs to be discounted.

Wage Statement Penalties: For the same reasons as those supporting a Waiting Time Penalty reduction, the top end/potential §226 penalty level should be reduced, even before a liability analysis for them begins.

PAGA: The penalties only apply if a predicate violation applies, which it oftentimes likely would not. Given that, the starting place for a PAGA analysis should be reduced.

Thus, ***before even considering the likelihood of recovering these damages/penalties***, the analysis would look more like this:

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
555 12TH STREET, SUITE 1725
OAKLAND, CA 94607
TEL: (510) 891-9800

| REALISTIC "STARTING PLACE" VALUATIONS | | | | | |
|---|---|---|---|---|---|
| Meal Breaks | Rest Breaks | Waiting Time | Wage Statements | PAGA | TOTAL |
| ~$100K | ~$100K | ~$150K | ~$75K | ~$75K | ~$450K |

Indeed, while, on its face, the total damages and penalties available to class members under either scenario are certainly higher than the settlement amount, so were the risks and delays inherent in protracted litigation. And further litigation wouldn't necessarily have tipped the scales in favor of either party since (a) significant discovery was already available to them and, as in all litigation, (2) both good and bad facts would inevitably have come to light for each side. What is certain, however, is that Argonaut would have fought the action very aggressively, thereby delaying the benefits now available through settlement to class members for quite some time.[19] As a result, the extraordinary result of a *non-reversionary* $365,000.00 fund is more than reasonable when balanced against the risks of continued litigation.

**2. The Complexity, Expense and Likely Duration of Continued Litigation Support Approval**

In evaluating for fairness, the Court should weigh the benefits of settlement against the expense and delay involved in achieving an equivalent or even more favorable result at trial. *Young v. Katz*, 447 F.2d 431, 433 (5th Cir. 1971); *Kullar*, 168 Cal.App.4th 116, 120 (2008). As California jurists have recognized, there exists "an overriding public policy favoring settlement of class actions." *Ferguson v. Lieff, Cabraser, Heimann & Bernstein*, 30 Cal.4th 1037, 1054 (2003) (citing *Franklin v. Kayrpo Corp.*, 884 F.2d 1222, 1229 (9th Cir. 1989) ("public policy favor[s] the compromise and settlement of disputes")). The alternative to a class action, namely numerous individual actions, could tax private and judicial resources for years. Given the relatively modest, though not inconsequential, amount of damages individual class members allegedly incurred (many class members worked for Defendant for just a few days or weeks), it would be

[19] Note that *Augustus* was filed in 2005 and not resolved until 2017—***12 years after its inception***.

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
555 12TH STREET, SUITE 1725
OAKLAND, CA 94607
TEL: (510) 891-9800

uneconomical to secure individual legal representation, even for those with the resources to do so. But, here, the Settlement provides *all* class members, regardless of their means, the opportunity of monetary recovery in a prompt and efficient manner, without the risk of the Court denying class certification and/or finding no liability, and these workers recovering nothing at all.

Class Counsel also considered that, even if Plaintiff prevailed, on both class certification and liability, the remaining processes could be lengthy and costly, potentially including appeals. What's more, class action defendants may seek a writ of mandate from an order granting class certification (*See, Cal. Code Civ. Proc*. § 904.1; *In re Cipro Cases I and II*, 121 Cal.App.4th 402, 409 (2004)), may drag out the trial through bifurcation of issues, phasing of the trial, challenges to its manageability, and the losing party there may take an appeal of any of these issues. As such, even a successful judicial resolution at the trial court level can be just the beginning of a lengthy, expensive process, stalling payments to class members for years.[20] This judicial purgatory is compounded by the risk of adverse appellate rulings, which would remand the action to the trial court for further litigation, possibly with negative precedent.[21] The complexity, expense, and delay of continued litigation in this matter supports final approval of the Settlement.

### 3. The Discovery and Factual Investigation Support Approval

The Settlement comes at a point in the litigation where counsel for both Plaintiffs and Defendant had clear views of the strengths and weaknesses of their respective cases. "[T]he extent of discovery completed and the stage of the proceedings" are factors that courts consider in determining the fairness, adequacy and reasonableness of a settlement. *Dunk*, 48 Cal.App.4th at 1794. SCA conducted extensive pre-filing due diligence, including review of publicly available

---

[20] Consider, for example, the plight of the employee-class members in *Savaglio v. Wal-Mart Stores, Inc.*, Case No. C-835687 (Alameda County Super. Ct.). Following four years of litigation and a four-month jury trial, in 2005, a $172 million verdict was entered against Wal-Mart on behalf of over 116,000 class members. Those aggrieved employees, however, did not receive any remuneration until 2011, more than five years later. As this Court is well aware, as of the date this motion was filed, reaction to the COVID-19 pandemic has sent unemployment rates skyrocketing, with a particularly painful impact upon more vulnerable segments, such as low skilled workers. Thus, it probably goes without saying that class members in this case need these settlement funds now more than ever.

[21] *See, e.g., Chau v. Starbucks Corp.*, 174 Cal.App.4th 688 (2009) (appellate court reversed an $86 million restitution award to a certified class of hourly employees).

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
555 12TH STREET, SUITE 1725
OAKLAND, CA 94607
TEL: (510) 891-9800

information, and conversations with witnesses. SCA then litigated this case aggressively, obtaining key information through discovery and an informal exchange of information ahead of mediation. Undoubtedly, the parties have thoroughly investigated, and are sufficiently knowledgeable of the facts to form educated assessments regarding their respective positions and the value of the case.

**4. The Experience and Views of Counsel Favor Final Approval**

"'Great weight' is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation…. This is because 'parties represented by competent counsel are better positioned than courts to produce a Settlement that fairly reflects each party's expected outcome in the litigation.'" *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004) (internal citations omitted). Experienced counsel, operating at arm's-length, have weighed the strengths of the case and examined all the issues and risks of litigation and endorsed the proposed Settlement. The view of the attorneys actively conducting the litigation "is entitled to significant weight" in deciding whether to approve the Settlement. *Fisher Bros. v. Cambridge Lee Industries, Inc.* 630 F. Supp. 482, 488 (E.D. Pa. 1985); *Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980), *aff'd*, 661 F.2d 939 (9th Cir. 1981)." The recommendations of plaintiffs' counsel should be given a presumption of reasonableness." *In re Omnivision Technologies, Inc.*, 559 F. Supp.2d 1036, 1043 (N.D. Cal. 2007) (citing *Boyd v. Bechtel Corp., supra*, 485 F. Supp. at 622).

Class Counsel supports the Settlement as fair, reasonable, and adequate, and believes it in the best interest of the class as a whole.[22] Class Counsel has substantial experience prosecuting complex litigation and/or class action lawsuits, has prosecuted hundreds of such cases involving the same issues as presented here. As discussed above, Class Counsel is intimately familiar with the litigation, having conducted extensive investigation and negotiation on behalf of the class. The

[22] "When approving class action settlements, the court must give considerable weight to class counsel's opinions due to counsel's familiarity with the litigation and its previous experience with class action lawsuits." *Alberto v. GMRI, Inc., Not Rpt'd in* F. Supp. 2d, 2008 WL 4891201 (E.D. Cal. 2008) (*citing Officers for Justice*, 688 F.2d at 625 and *In re Washington Public Power Supply System Securities Litigation*, 720 F. Supp. 1379, 1392 (D. Ariz. 1989)).

endorsement by well-informed and qualified counsel of a settlement as fair, adequate, and reasonable is entitled to significant weight. *Dunk*, 48 Cal.App.4th at 1802; *Ellis Naval Air Rework Facility*, 87 F.R.D. 15 (N.D. Cal. 1980); *Boyd*, 485 F. Supp 610, 617 (N.D. Cal. 1979).

**5. The Class Members' Reaction Favors Final Approval**

The absence of objections supports a strong presumption of fairness and that the Settlement is adequate and reasonable. *Martin v. AmeriPride Servcs.*, No. 08cv440–MMA (JMA), 2011 WL 2313604, at *7 (S.D. Cal. June 9, 2011); *see also In re: Omnivision Techs*., 559 F.Supp.2d, 1036, 1043 (N.D. Cal. 2007), ("By any standard, the lack of objection of the Class Members favors approval of the Settlement."). The lack of objections provides persuasive evidence of its reasonableness. *Boyd v. Bechtel Corp.*, *supra*, 485 F. Supp. at 62. Here, class members' response to the settlement has been almost unprecedented; there have been no objections and only one opt out, further demonstrating that the Settlement is fair, adequate, and reasonable, and worthy of final approval.

## IV. THE COURT-ORDERED NOTICE PROGRAM IS CONSTITUTIONALLY SOUND AND HAS BEEN FULLY IMPLEMENTED

This Court is vested with discretion in fashioning an appropriate notice program. *Cal. Civ. Code* § 1781; *Cartt v. Superior Court*, 50 Cal.App.3d 960, 973-974 (1975). To protect the rights of absent class members, the parties must provide the class with the best notice practicable, but due process does not require actual notice to parties who cannot reasonably be identified. *See, Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811-812 (1985); *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (U.S. 1974); *Manual* § 21.311, n. 882 at 432; *Cal. Rules of Ct., Rule* 3.766(d).

The Court-approved Notice program met this standard and has now been fully implemented. The Settlement Administrator mailed and emailed the Notice Package to the entire

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
555 12TH STREET, SUITE 1725
OAKLAND, CA 94607
TEL: (510) 891-9800

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
555 12TH STREET, SUITE 1725
OAKLAND, CA 94607
TEL: (510) 891-9800

class on December 21, 2020. Of the 419 mailed Notices, only 9 Notices remain undeliverable. This is unquestionably an excellent result for such a large workforce.[23]

While the Notice allowed class members 45 days to either opt out or object,[24] no claim form was required for class members to participate in the Settlement. This approach was chosen so as to avoid unnecessary confusion, maximize class member recoveries, and reduce administrative costs.

It should be noted that the single opt out and lack of objectors is not tantamount to a lack of interest in the Settlement, however. While the claims administrator undoubtedly received far more, Class Counsel's firm fielded dozens of telephone calls from class members. With these calls came myriad questions, largely about the timing of funds distribution, whether class members were required to appear in court show their support, whether unrelated human resources and/or workplace safety complaints would be released through this Settlement (they would not), but ***none*** demonstrating any concerns over the *sufficiency* of the Settlement. Indeed, not only did class members not reject the Settlement, they embraced it.

## V. AN AWARD OF ATTORNEYS' FEES AND COSTS IS APPROPRIATE

### A. <u>A COMMON FUND FEE AWARD IS WARRANTED</u>

Public policy promotes approval of fee requests since "[t]he function of an award of attorney's fees is to encourage the bringing of meritorious…claims which might otherwise be abandoned because of the financial imperatives surrounding the hiring of competent counsel." *City of Riverside v. Rivera*, 477 U.S. 561, 578 (1986) (internal quotation marks and citations omitted). Additionally, attorneys' fees are awarded based on the value of the common benefit made available to the class, regardless of whether the settlement contains a reversion provision. *Williams v. MGM-Pathe Communs. Co.*, 129 F.3d 1026, 1027 (9th Cir. 1997); *Boeing Co. v. Van Gemert*, 44 U.S.

---

23 Salinas Decl. ¶¶ ____.

24 Although only one objection has been raised (i.e., not really an objection), should any late-filed objections arise prior to the June 8, 2020 hearing, the claims administrator and Class Counsel will facilitate any class member's participation in this final fairness hearing—either in person or telephonically—given potential court closures and/or COVID-19 concerns.

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
555 12TH STREET, SUITE 1725
OAKLAND, CA 94607
TEL: (510) 891-9800

472, 480-81 (1980). In this case, there will be no reversion of any kind to the Defendant, further rendering the fees request appropriate.

Specifically, the settlement provides for an attorneys' fee award of 25% of the settlement amount, a typical percentage in the resolution of common fund cases.[25] SCA has devoted numerous hours to and faced significant risk[26] in the prosecution of this matter and, more importantly, made an extraordinary fund available to a large number of otherwise-underrepresented, low paid workers.

The "common fund" method, or "percentage-of-the-benefit" analysis, calculates attorneys' fees based on a percentage of the common benefit to the class. *In re Consumer Privacy Cases*, 175 Cal.App.4th 545 (2009); *Serrano v. Priest*, 20 Cal.3d 25 (1977). In cases where a common fund has been created—i.e., where each class member will "receive a mathematically ascertainable payment"[27]—California state courts,[28] the Ninth Circuit[29] and the United States Supreme Court[30] agree that awarding attorneys' fees as a percentage of the common fund is the proper method.[31]

---

[25] *See, e.g., Barbosa v. Cargill Meat Solutions Corp.*, 2013 U.S. Dist. LEXIS 93194 (E.D. Cal. 2013) (33% fee award of gross fund); *Boyd v. Bank of Am. Corp.*, No. SACV 13-0561-DOC, 2014 WL 6473804, at *9 (C.D. Cal. 2014) (33 1/3% fee award in wage and hour class action); *Morris v. Lifescan, Inc*. 54 Fed.Appx. 663 (9th Cir. 2003) (affirming 33% fee award); *Savage v. California Family Health LLC*, Case No. 34-2016-00192282-CU-OE-GDS (Sacramento Super. Ct. 2017) (1/3 fee award in wage and hour class action); *Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482 (E.D. Cal. 2010) (33 1/3% award in wage and hour class action); *See*, Exhibit "D" (Compendium of Settlement Item Awards).

[26] SCA undertook this matter solely on a contingent basis, with no guarantee regarding the potential duration of the litigation or even the ultimate reimbursement of fees or costs. Looking, *ad hoc*, at the fact that a settlement did occur, doesn't change the risks accepted at the inception of the case or at any point along its timeline. Nor , looking more broadly, does it account for the countless cases that do not settle, do not settle well and/or are dismissed after sometimes thousands of hours of work thereon.

[27] *Vasquez*, 266 F.R.D. 482 at *491 (E.D. Cal. 2010).

[28] *Lealao v. Beneficial California*, 82 Cal.App.4th 19 (2000); *Serrano v. Priest*, 20 Cal.3d 25 (1977).

[29] *Staten v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003); *Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000).

[30] The United States Supreme Court has always computed common fund fee awards on a percentage of the fund basis. *Boeing Co. v. Van Gemert*, 444 U.S. 472, 100 S Ct. 745 (1980); *Central Railroad & Banking Co. of Georgia v. Pettus*, 113 U.S. 116, 5 S.Ct. 387 (1885); *Sprague v. Ticonic Nat'l Bank,* 307 U.S. 161, 59 S.Ct. 777 (1939).

[31] A lodestar approach (enhanced by a multiplier) can be used as an alternative to the common fund theory when "there is no way to gauge the net value of the settlement or any percentage thereof." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998).

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
555 12TH STREET, SUITE 1725
OAKLAND, CA 94607
TEL: (510) 891-9800

As expressed by the Third Circuit's Task Force on the Selection of Class Counsel,[32] in Conte and Newberg's treatise on class actions ("*Newberg*")[33] and, *inter alia*, in *Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984), the rationale for this is commonsensical: in common fund cases, fees are not assessed *against* the unsuccessful litigant (a.k.a. "fee shifting"), but rather, are *taken from the fund* or damage recovery (a.k.a. "fee spreading"). In contrast to the calculation of a statutory fee, payable by the defendant depending on the extent of success achieved, a common fund is itself the measure of success and represents the benchmark from which a fee will be awarded. *5 Newberg* § 15.53 at 183. Consequently, the analysis in a common fund case focuses not on the plaintiffs' position as "prevailing parties," but on a showing that the fund conferred a benefit upon the class which resulted from their efforts. *Id.*, § 2.06 at 40.[34] As explained above, the United States Supreme Court has specifically endorsed the use of this method in paradigmatic common fund cases such as this.[35]

The *Serrano* factors further justify the common fund fee award.[36] *Serrano* explained the trial courts may consider additional factors when considering a fee award: (1) time and labor required; (2) the contingent nature of the fee agreement; (3) extent to which the nature of the litigation precluded other employment by the attorneys; (4) experience, reputation, and ability of the attorneys who performed services in the litigation and their displayed skill; (5) amount

---

[32] *See, Third Circuit Task Force on the Selection of Class Counsel* (Final Report, January 2002), available at https://www.ca3.uscourts.gov/sites/ca3/files/final%20report%20of%20third%20circuit%20task%20force.pdf (recommending that all fee awards in common fund cases be awarded as a percentage of the fund, but that a lodestar analysis continue to be the applicable method for determining statutory fee shifting awards); *Report of the Third Circuit Task Force*, 108 F.R.D. 237, 255 (hardcopy not exhibited here due to length of document).

[33] *Newberg on Class Actions* (5th ed. 2017).

[34] The common fund doctrine is "based on the commonsense notion that the 'one who expends attorneys' fees in winning a suit which creates a fund from which others derive benefits, may require those passive beneficiaries to bear a fair share of the litigation costs.'" *Consumer Cause, Inc. v. Mrs. Gooch's Natural Food Markets, Inc*., 127 Cal.App.4th 387, 397 (2005) (internal citation omitted); *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) ("a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole," and class members who benefit from a lawsuit "without contributing to its cost are unjustly enriched at the successful litigant's expense.").

[35] *Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984) (". . . under the "common fund doctrine," …a reasonable [attorneys'] fee is based on a percentage of the fund bestowed on the class…").

[36] *Serrano v. Priest*, 20 Cal.3d 25 (1977); *Dunk v. Ford Motor Co.*, 48 Cal.App.4th 1794 (1996).

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
555 12TH STREET, SUITE 1725
OAKLAND, CA 94607
TEL: (510) 891-9800

involved and the results obtained; and (6) the informed consent of the client to the fee agreement. *Serrano*, 20 Cal.3d at 49.

Class Counsel has invested considerable amounts of time and labor in litigating the Class' claims. SCA incurred nearly 500 hours in prosecuting this litigation.[37] In so doing, Class Counsel drew on its collective experience litigating wage and hour class actions against employers very much like this one[38] in order to minimize wasted effort. Class Counsel's efforts include, *inter alia*, conducting written discovery (both formal and informal), production and review of documents, obtaining data for mediation, interviews with putative class members, a full day mediation session and hard fought negotiations, and creative ways of publicizing this case and reaching witnesses so as to put the maximum pressure on Defendant. SCA harnessed evidence from all available resources, conducted significant discovery, designed an outreach campaign to "fill in the gaps." Only after that work did it use its skills and experience to negotiate an outstanding result for numerous class members.[39]

The fee award is further supported by the contingency risk assumed in prosecuting the case.[40] The California Supreme Court has recognized that attorney fee awards should be enhanced to compensate attorneys for the risks of loss involved in contingency cases. *Ketchum v. Moses*, 24 Cal.4th 1122, 1133 (2001); *Graciano v. Robinson Ford Sales, Inc.*, 144 Cal.App.4th 140, 154 (2006); *See also, In re Consumer Privacy Cases*, 175 Cal.App.4th at 556.

---

[37] SCA's Lodestar Report is attached as Exhibit "F" to the Declaration of Scott Edward Cole, Esq.

[38] Exhibit "B," SCA's Professional Resume.

[39] Attorney fee awards in common funds cases are intended to compensate class counsel for work performed both before *and after* the date of judgment. In nearly every class action, the efforts during litigation and in pursuing approval of the settlement are only part of the overall work picture. Post-judgment, class counsel is required to stay in close contact with the claims administrator to ensure payment of the settlement proceeds, to communicate with class members, with their CPAs (regarding the tax treatment of settlement proceeds), even with other attorneys, to report compliance with the terms of the Court's final approval order thereon and myriad other tasks. Although rarely discussed in connection with requests for attorneys' fees and costs, it's not unusual for some of these efforts to take place years after judgment. With a class of this magnitude, these are efforts that will assuredly be required by SCA.

[40] California courts "agree...that 'riskiness,' difficulty or contingent nature of the litigation is a relevant factor in determining a reasonable attorney fee award." *Salton Bay Marina, Inc.*, 172 Cal.App.3d at 955 (*citing La Mesa-Spring Valley School Dist. of San Diego County v. Nobuo Otsuka*, 57 Cal. 2d 309, 316 (1962); *See also, In re Quantum Health Resources, Inc. Sec. Litig.*, 962 F. Supp. 1254, 1257 (C.D. Cal. 1997).

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
555 12TH STREET, SUITE 1725
OAKLAND, CA 94607
TEL: (510) 891-9800

SCA undertook this matter solely on a contingent basis, with no guarantee regarding the potential duration of the litigation or the ultimate recovery of fees or costs. While Class Counsel believes the claims in this case are meritorious, it also recognized the factual and legal challenges involved in complex litigation, generally, as well as the specific risks posed by the facts in this case. While attorneys who represent corporations are routinely paid (often quite handsomely) on an hourly basis, plaintiffs in wage and hour cases can rarely afford to pay their attorneys by the hour, especially if they expect to be represented by a law firm well known for achieving good results. As a firm committed to wage and hour class actions, including the one at hand, Class Counsel must accept these cases on a wholly contingent basis, with no guarantee of recovery of fees, or even the reimbursement of litigation costs. Class Counsel's commitment to this litigation should not be assessed in a vacuum.[41] The countless hours Class Counsel spent on litigation, investigation and settlement efforts in this case prevented it from pursuing other hourly or contingency fee-based work.

The experience and ability of Class Counsel were essential to the settlement achieved here. Class Counsel developed an extensive factual record, convinced Defendant of its exposure, and expertly negotiated the terms of the Settlement. Only counsel well versed in class action litigation and wage and hour law in this jurisdiction could have effectively marshaled the evidence and presented it to achieve this Settlement.[42] "The overall result and benefit to the class from the litigation is the most critical factor in granting a fee award." *In re Omnivision Techs.*, 559 F. Supp. 2d 1036, 1046 (N.D. Cal. 2007).

Furthermore, the agreement of Plaintiff to enter into a contingency fee arrangement supports the requested attorney fee award. *Glendora*, 155 Cal.App.3d at 472. Here, Plaintiff entered into consensual contingency fee agreement and also expressly endorses Class Counsel's

---

[41] *Glendora Community Redevelopment Agency*, 155 Cal.App.3d at 475 (recognizing that "a busy lawyer" with a good "reputation" might be "reluctant to accept the employment because of the preclusion of other business"); *Cal. Rules Prof. Conduct, R.* 4-200 (B)(4) (when determining whether a fee is appropriate, individual attorneys must consider "[t]he likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the member").

[42] Exhibit "B," SCA's Professional Resume.

request for attorneys' fees and costs. Additionally, class members have been notified of the requested attorneys' fees and costs by means of the Notice, and not a single person objected.[43] In light of the work performed, risks assumed and results achieved, it is clear that clear that Class Counsel's fee request is supported and should be approved.

### B. CLASS COUNSEL'S COSTS ARE REASONABLE

Over the course of this litigation, Class Counsel incurred ordinary litigation costs over the past two years totaling $6,673.02, and anticipates incurring additional expenses overseeing the settlement process, making future appearances, etc.[44] Noteably, this amount does not account for additional future expenses in overseeing the settlement process, making appearances, filing court documents, ensuring claims administration compliance with this Court's orders, responding to class members, CPAs, etc. Since these costs are reasonable and served to benefit the class, they warrant reimbursement.[45]

## VI. REPRESENTATIVE PLAINTIFF DESERVES THE PROPOSED ENHANCEMENT AWARD

The Settlement further provides for, and Representative Plaintiff now requests, an enhancement award (aka service payment) in the amount of $2,500 to plaintiff Morgan McShan. Service awards to the lead plaintiff in class action litigation are commonplace and are "intended to compensate class representatives for work done on behalf of the class, to make up for financial

---

43 Litigants are familiar with one-third fee recoveries being the norm–this percentage (or higher awards of 35% or 40%) being common in employment, personal injury and other areas of litigation within the commonplace experience of these class members. Also, as suggested by the compendium of examples cited throughout this brief, it is a judicial benchmark as well. Indeed, "[e]mpirical studies show that…fee awards in class actions average around one-third of the recovery." *4 Newberg* § 14.6

44 Exhibit "C," SCA's Cost Journal.

45 *In re United Energy Corp. Sec. Litig.*, *Not Rpt'd in* F.Supp., 1989 WL 73211, * 6 (C.D. Cal. 1989) ("[a]n attorney who creates or preserves a common fund by judgment or settlement for the benefit of a class is entitled to receive reimbursement of reasonable fees and expenses involved"); 1 Alba Conte, *Attorney Fee Awards* § 2:08 at 50-51 ("The prevailing view is that expenses are awarded in addition to the fee percentage."); *In re Warner Comm. Sec. Litig.*, 618 F.Supp. 735 (S.D.N.Y.1985); *In re GNC Shareholder Litig.: All Actions*, 668 F.Supp. 450, 452 (W.D. Pa. 1987).



SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
555 12TH STREET, SUITE 1725
OAKLAND, CA 94607
TEL: (510) 891-9800

or reputational risk undertaken in bringing the action,[46] and, sometimes, to recognize their willingness to act as a private attorney general." Service awards "are intended to advance public policy by encouraging individuals to come forward and perform their civic duty in protecting the rights of the class and to compensate class representatives for their time, effort and inconvenience …Federal authority is in accord."[47]

Courts consider the following factors in determining the appropriateness of such an award: (1) the risk to the class representative in commencing suit; (2) the notoriety and personal difficulties encountered by the class representative; (3) the amount of time and effort spent by the class representative; (4) the duration of the litigation; and (5) the personal benefit (or lack thereof) enjoyed by the class representative as a result of the litigation. *Van Vranken v. Atlantic Richfield Co.*, 901 F. Supp. 294, 299 (N.D. Cal. 1995).

The proposed service award is reasonable[48] given the work the Representative Plaintiff performed on behalf of fellow class members, the risks he faced and those continued to be faced for his participation in the litigation (e.g., retaliation from future employers), and the minimal impact the request will have on the amount of any class member's level of recovery. As detailed in the Representative Plaintiff's declaration, submitted herewith, this individual initiated his actions and devoted considerable time thereto. This included frequent emails and telephone calls with counsel to address issues surrounding the organizational structure of the company, job duties they and other class members performed, production of documents and communications surrounding mediation and settlement.

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
555 12TH STREET, SUITE 1725
OAKLAND, CA 94607
TEL: (510) 891-9800

---

[46] Plaintiffs risked being "blacklisted" by other future employers for having sued this defendant in a class action. As well stated by a New York Southern District Court: "[T]he fact that a plaintiff has filed a federal lawsuit is searchable on the internet and may become known to prospective employers when evaluating the person . . . Even where there is not a record of actual retaliation, notoriety, or personal difficulties, class representatives merit recognition for assuming the risk of such for the sake of absent class members." *Guippone v. BH S&B Holdings LLC*, 2011 U.S. Dist. LEXIS 126026, at **4, 20 (S.D.N.Y. Oct. 28, 2011).

[47] *In re California Indirect Purchases*, 1998 WL 1031494, 11 (Alameda Super. Ct. 1998) (internal citations omitted).

[48] Indeed, some courts have awarded far higher amounts. *Adewumi vs. GHS Interactive Security LLC*., No. 34-2017-00210768-CU-OE-GDS (Sacramento Super. Ct. 2019); *Augustus v. ABM Security Services, Inc*., *supra* ($50,000 and $25,000 service payments); *Pangan v. East L.A. Doctors Hospital, LP*, No. BC431371 (Los Angeles County Superior Court May 1, 2012; Judge Wiley Jr.) (awarding $20,000 incentive award); *See*, Exhibit "D" (Compendium of Settlement Item Awards).

Representative Plaintiff assumed the risk that future employment prospects might be diminished with his attachment to this class action case and waived rights (e.g., a §1542 release) greater than those waived by the absent class members. Finally, the proposed enhancement award is fair to other class members because it will not significantly reduce the settlement funds available to them. For these reasons, the service award should be approved.

**VII. REIMBURSEMENT OF ADMINISTRATION FEES IS APPROPRIATE**

Representative Plaintiff respectfully requests payment of Simpluris' settlement administration costs and fees be approved. By the time of preliminary settlement approval, Simpluris had submitted a competitive bid of $7,499—a very reasonable amount given the size of the class and the work required to send the Notice, process settlement checks, establish a website, and communicate with class members and counsel.

**VII. CONCLUSION**

Based upon the foregoing, Representative Plaintiff respectfully requests the Court grant final approval of the Settlement and approve Class Counsel's application for attorneys' fees and costs, the requested service award to the named Plaintiff, the PAGA award, and reimbursement of the settlement administration costs.

Dated: March 11, 2021

**SCOTT COLE & ASSOCIATES, APC**

By: /s/ *Laura Van Note*
Laura Van Note, Esq.
Attorneys for Representative Plaintiff(s), *et al.*

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
555 12TH STREET, SUITE 1725
OAKLAND, CA 94607
TEL: (510) 891-9800